Billy Joe WADE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 22976.

United States Court of Appeals
Fifth Circuit.

March 31, 1966.

Rehearing Denied May 11, 1966.

Warren L. Jones, Circuit Judge, dissented.

Weldon G. Holcomb (Court-appointed), Tyler, Tex., for appellant.

H. D. Nicholson, Asst. U. S. Atty., Wm. Wayne Justice, U. S. Atty., Tyler, Tex., for appellee.

Before TUTTLE, Chief Judge, and JONES and WATERMAN,* Circuit Judges.

TUTTLE, Chief Judge.

Billy Joe Wade was arrested in Houston, Texas, on the 2nd day of April, 1965. He had been indicted by a federal grand jury for the Eastern District of Texas, which charged that, along with Briggs and Pickett, he had conspired with them to rob, and had robbed, a federally insured bank at Eustace, Texas. It is apparent that the indictment was based entirely upon the testimony given by the alleged accomplices, who had been arrested and sentenced on another offense some time earlier.

The trial court appointed counsel on April 26, 1965, at which time Wade was in custody in the Smith County Texas Jail. Thereafter, without notice to counsel, on May 12th, the appellant was taken from his cell to the second floor of the courthouse. At that time, the president and cashier of the bank, the only persons who were present at the time of the robbery, were in the courtroom, where a lineup was to take place. They observed Wade in the hall outside the courtroom in the custody of an officer, and thereafter, following the assembly of five other persons, Wade was put in the lineup of six people. Each of the six men in the lineup had had some bandages affixed to his face in a manner which the witnesses had stated had been worn as a disguise by the person who had robbed the bank. The lineup was conducted by Special Agent Albert of the Federal Bureau of Investigation. The record discloses that while they were in the lineup, "Mr. Albert asked them some questions —to step forward and so forth."

The witnesses, Mr. Gray and Mrs. Chambers, identified the appellant in the lineup as the individual who robbed the First State Bank of Eustace. Later, at the trial, both Briggs and Pickett testified as to their participation with Wade in the robbery and the identification was repeated by Mrs. Chambers and Mr. Gray. Wade was found guilty by the jury and sentenced by the trial court to serve five years on the first count and fourteen years on the second count, the sentences to run concurrently.

Although the record does not show exactly what oral statements were required to be made by Wade during the lineup, government counsel, in oral argument, commendably conceded that each of the persons in the lineup was required to repeat words something like, "Put the money in this bag", in order that the witnesses could hear similar words to compare with their recollection of the sound of the voice of the person who gave them such instructions at the time of the robbery.[1]

Appellant's attack on his conviction and sentence here is two-fold. He complains, first, that the manner in which he was brought to the attention of the principal non-accomplice witnesses against him for identification purposes, amounted to a requirement that he give evidence against himself in violation of the Fifth Amendment, and that, second, subjecting him to the lineup under the circumstances here stated, in the absence of his counsel, after the accusatory stage of the prosecution had commenced, deprived him of the right to counsel at a critical stage of the proceedings in violation of the Sixth Amendment to the Constitution. He says that the later identification by the bank officials in open court was necessarily poisoned by their earlier identification of him conducted in the prejudicial manner outlined, and that, thus, it was error to receive the testimony of the two witnesses who identified in open court. Appellant relies on

---

* Of the Second Circuit, sitting by designation.

1. We deem it appropriate to consider this fact as a part of the record on appeal because, were it not considered, then it would remain as a possible basis for the filing of a petition for post conviction review at a later date, if it is not disposed of on direct appeal at this time.

the cases of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246.

Appellant concedes that the courts have repeatedly held that an ordinary lineup of an accused person with others for the purpose of having them viewed by victims of the alleged crime for purposes of identification does not run afoul of the self-incrimination provisions of the Fifth Amendment. Although no Supreme Court decision on this precise point has been cited nor found by us, there is the well-known dictum of Mr. Justice Holmes in Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, where it is said that the prohibition of the Fifth Amendment "is a prohibition of the use of physical or moral compulsion to extort communications from him, not in exclusion of his body as evidence when it may be material."

■ The Court of Appeals for the Second Circuit, sitting en banc in the case of United States ex rel. Stovall v. Denno, Warden, 2nd Cir., 355 F.2d 731, (decided Jan. 31, 1966), deals with this problem in extenso. We find no reason to express a contrary conclusion so far as relates to the ordinary police lineup which is carried out under conditions which permit the greatest objectivity of viewing the accused with others who are exhibited with him.

When, however, a lineup goes beyond these limits, such as, for instance, requiring him to act out part or all of the crime which it is charged that the perpetrator of the crime performed, we note a very strong caveat. As Judge Friendly of the Second Circuit pointed out in his prior opinion in *Stovall*, when it was first decided by a panel of three judges, (Unpublished opinion, No. 307, Sept. Term, 1964, decided Mar. 31, 1965,) the Holmes opinion in the *Holt* case which said, "Moreover, we need not consider how far a court would go in compelling a man to exhibit himself. For when he is exhibited, whether voluntarily or by order, and even if the order goes too far, the evidence, if material, is competent,

Adams v. [People of State of] New York, 192 U.S. 585 [24 S.Ct. 372, 48 L.Ed. 575]" was written before Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, which, for the first time proscribed the use in the Federal courts of illegally obtained evidence. Following *Weeks*, it does become important in a proper case to determine whether an order requiring that a man "exhibit himself" goes too far.

However, we need not resolve this issue in this case because we are persuaded of the correctness of the position taken by the dissenting judges in the *Stovall* case, when it was decided by the court en banc. There, Judges Friendly, Waterman and Smith found that a compulsory confrontation by an accused person charged in a capital case by taking him to the hospital of one of the victims of the violent crime for identification after his arrest, but before counsel had been appointed for him, violated the principles announced by the Supreme Court in Massiah v. United States, because, as the dissenting opinions of Judges Friendly and Waterman stated, "[T]he state wishes to make use of him to obtain evidence that will have independent testimonial value."

■ Here, as was true without question in the *Stovall* case, there is no doubt that the criminal prosecution had commenced and that Wade was, at all times thereafter, entitled "to have the Assistance of Counsel for his defence." Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193. It becomes necessary, therefore, only to determine here whether requiring Wade to submit to a lineup of the character that has been depicted above in the absence of counsel already assigned to him, deprived him of the aid of counsel at a critical stage of the prosecution. At this late date, it cannot be doubted that if Wade had made a confession, instead of being subjected to the lineup and being required to speak certain words formulated by the prosecution, a conviction based on such confes-

sion would be void. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. Neither can there be any doubt that if counsel had been notified and had been present, he could have instructed his client, the appellant here, to remain silent and not make the verbal responses required of him by the prosecutor. Counsel, if present, might also have been able to prevent the placing of the suspect in a place where he could be seen separately by the prospective prosecution witnesses before the lineup took place.

■ We think it clear that the conduct of the lineup under the circumstances here present, in the absence of counsel, was a violation of Wade's constitutional rights. There remains the question whether such violation was of such a nature as to require a finding that the lack of counsel was prejudicial to Wade.

■ The test whether error was harmless was last stated by the Supreme Court in Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, where the court said, "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 375 U.S. 85, 86, 84 S.Ct. 229, 230. In view of the fact that the identification of Wade by Mr. Gray and Mrs. Chambers at the lineup was six months after the occurrence, and, in view of the fact that Wade was placed, even fleetingly, in a position where he was seen separately by the two prospective witnesses alone, before the lineup, and also because of the compulsory verbal responses made by Wade at · the instance of the Special Agent, it cannot be said with any certainty that they would have recognized appellant at the time of trial if this intervening lineup had not occurred. Further, when it is considered that the only other testimony by which Wade was identified with the crime was the testimony of his alleged accomplices, who admitted at trial to inconsistent statements, we would be naive, indeed were we to hold that "There [was not] a reasonable possibility that the [violations] complained of might have

contributed to the conviction." This being the test devised by the Supreme Court as being applicable in its review of a State court conviction, it must be assumed that, in a Federal court conviction, no less strict a standard applies. The dissenting opinion in Fahy v. State of Connecticut, notes this distinction. 375 U.S. 85, 92, 84 S.Ct. 229.

■ It appearing, therefore, that the lineup, held as it was, in the absence of counsel, already chosen to represent appellant, was a violation of his Sixth Amendment rights, and, it being plain that the error in not striking the testimony of the two witnesses which we find may well have been colored by the illegal procedure was prejudicial under these applicable legal standards, it follows that the judgment of conviction must be reversed and the case remanded for further proceedings. In the event of a new trial, the evidence of the two bank witnesses, following the occurrence that we have held to have violated Wade's rights, must be omitted.

The judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

WARREN L. JONES, Circuit Judge (dissenting).

The effect of the determination of the majority will probably result in the discharge of two persons convicted of bank robbery. The decision of the majority is made, at least in part, on the basis of facts outside the record. These facts are considered, so it is said, in order to avoid having a post conviction proceeding instituted. I am not persuaded that this is any justification for considering on appeal something which was not in the record and not before the trial court. Post conviction remedies were intended to cover situations where the right to relief was not disclosed by the record. It follows from the opinion of the majority that it is improper for observers of a crime to see a person suspected or accused of the offense prior to trial. I had no notion that this was prohibited.

I do not think it has been previously held that putting a suspect or an accused in a line-up and treating him in the same manner as the others are treated is or may be a violation of a constitutional right.

I would follow the decisions cited by the majority rather than the dissenting views in those cases. Therefore I dissent.