Scotty Shirley HANKS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 9596.

United States Court of Appeals
Tenth Circuit.

Jan. 18, 1968.

Kenneth K. Simon, Kansas City, Mo., for appellant.

Thomas E. Joyce, Asst. U. S. Atty., Kansas City, Kan. (Newell A. George, U. S. Atty., Kansas City, Kan., with him on the brief), for appellee.

Before PICKETT, LEWIS and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

This is an appeal from a conviction in the United States District Court for the District of Kansas. The appellant Hanks was charged in an information which stated, in substance, that on December 7, 1966, the defendant did wilfully, unlawfully and feloniously make an assault on Fred O. Peterson, a person having lawful custody of a United States Post Office in Kansas City, Kansas, with intent to rob and steal mail matter, money and United States postal money orders which were then in Peterson's custody, and in attempting to effect such robbery, the defendant put the life of Peterson in jeopardy by the use of a dangerous weapon, to-wit: a shotgun, in violation of 18 U.S.C. § 2114. The statute provides for imprisonment of not more than 10 years for robbery, but if the life of a person in custody of the property described is put in jeopardy by the use of a dangerous weapon, then the imprisonment shall be for 25 years. The defendant was sentenced to serve a term of 25 years in prison.

The evidence at the trial showed that on the above date Peterson was preparing to close the post office substation shortly before 5:00 P.M. when a man entered and stated that he desired to purchase some stamps. Peterson turned away to obtain the stamps and when he returned to the counter the man shoved a shotgun in his face and said: "This is a holdup and back up to the chair." By that time another man had appeared with a revolver and other instructions were given to Peterson before he was bound and placed face-down on the floor. Peterson had an opportunity to view and observe both men during the robbery. Currency and money order forms in his possession were taken and a safe was opened and money stolen from it. An audit of the station disclosed that 38 money order forms and $1,265.60 were missing after the robbery. Some of the money orders were later cashed and the handwriting thereon was established to be that of Hanks. After the arrest of Hanks, Peterson identified him as the person who threatened him with a sawed-off shotgun. Hanks did not take the stand at the trial. His defense consisted of testimony of relatives for the purpose of establishing an

alibi. The man who carried the revolver has not been ápprehended.

Peterson testified on cross-examination that shortly after the robbery he was interviewed by a postal inspector, at which interview details of the robbery were related, and that the inspector made longhand notes of what he told him. Thereupon defense counsel, in open court, requested that these notes be produced, as required by 18 U.S.C. § 3500, commonly known as the "Jencks Act." At a hearing without the presence of the jury, the court examined the notes written by the inspector, together with the conventional reports furnished to the United States Attorney in connection with the pending prosecution. After an examination in camera, the court ordered the notes delivered to defense counsel, but held that the reports did not contain statements of Peterson as defined by the Jencks Act. An examination of these reports, which were sealed by the court and made a part of the record, discloses that they contain only a description of the robbery, the events leading to the arrest of Hanks, and the personal and criminal history of the accused, together with a list of witnesses, and a brief statement of what their testimony would be. They do not purport to contain a substantially verbatim report of what Peterson had said at the interview.

■■ The underlying purpose of the Act is to protect government files from unwarranted disclosure and to require the government, after a witness has testified, to make available to an accused for impeachment purposes, statements of the witness which it has in its possession. It does not "compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness." Palermo v. United States, 360 U.S. 343, 350, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287; Ayash v. United States, 10 Cir., 352 F.2d 1009, and

cases cited. The only government instruments available are those which fall within the Act's definition of "statements" which relate to the subject matter of a witness's testimony. The agent's reports in this case were not such statements.

■■ There is no merit to the contention that because the requests for the production of statements were made in the presence of the jury reversible error occurred. The request for Peterson's statements was made by defense counsel in open court, and immediately thereafter further discussion of the availability of the documents took place in the Judge's chambers. The notes of the inspector were not read to the jury, and any reference to them before the jury was made by the defense.[1] Defense counsel also requested and received statements made by Inspector Breda to his superiors. Again the only reference to the statements before the jury was made by defense counsel. If there was error, it was invited by defense counsel and he cannot now complain. 5 C.J.S. Appeal and Error § 1501; O'Neal v. United States, 10 Cir., 240 F.2d 700.

■ Sometime after the arrest of Hanks, the postal inspector asked Peterson to come to his office for the purpose of making an identification. The postal inspector, Peterson, and Hanks were in the office together for approximately ten minutes. During this time there was a conversation between Hanks and the inspector, and Peterson had the opportunity to observe and hear the voice of Hanks. Prior to that time Peterson was presented with a number of photographs from which he selected one of Hanks as the person who had robbed him. Peterson testified that during the robbery he had the oportunity to observe Hanks and to hear his voice when directions were given to him. He identified Hanks as the person who had pointed the shotgun at

1. Upon return to the court room, in the presence of the jury, defense counsel questioned the court as follows: "Does the record now show that the government has furnished us court's exhibits 4 and 5 which we have had adequate time to examine under Title 18, U.S.C. § 3500?" With respect to Inspector Breda's report, defense counsel made a similar statement in the presence of the jury.

him and ordered him to stand back.[2] It is asserted that the pre-trial confrontation between Peterson and Hanks in the inspector's office for the purpose of identification without other subjects for comparison was conducive to an irreparable mistaken identification and a denial of due process of law. While individual confrontations for the purpose of identification have been condemned, considering the totality of the circumstances in this case, we find no unfairness in the identification by Peterson which would constitute a denial of due process of law. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Cf. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

■ Objection was made to the introduction in evidence of three money orders cashed after the robbery which were identified as having disappeared from the post office during the robbery, on the ground that establishment of defendant's handwriting thereon was proof of the commission of crimes other than that charged in the information. Tests

for determining the admissibility of such evidence were reiterated by this court in Mills v. United States, 367 F.2d 366, 367, where it was said:

"To be admissible, evidence of other criminal acts must tend to prove the accused guilty of the crime charged, to connect him with the crime, or to prove some particular element or material fact of the crime. Evidence of other offenses is admissible if it shows motive, intent, knowledge, or course of conduct on the part of the accused."

In Beckwith v. United States, 367 F.2d 458, 460, we said:

"While evidence of other and unrelated crimes is not generally admissible, such evidence is admissible where it is of connected offenses or similar acts and incidents and tends to show that the act for which the accused is being tried was not inadvertent, accidental, unintentional or without guilty knowledge."

Although the evidence may have tended to prove the commission of other crimes, its primary purpose was to show that Hanks later had in his possession and

2. After testifying that at the time of the robbery Hanks had a prominent mark underneath his right eye which was not evident at the time of trial, stated:
"Q. Now, notwithstanding the fact that mark was not there when you saw him in the postal inspector's office on January 30th and it isn't there now, what enables you to identify him?
A. His definite facial features and his body build and his posture and his voice.
Q. Now, how much conversation did you have with him during the robbery?
A. Not over two or three minutes.
Q. Well, what did he say? What words did he say during that time?
A. Well, first he said, 'This is a robbery,' and then, 'Give me your money.' And at that time, well, I backed off and they proceeded to get the money themselves and then he told me to move over out of the line of vision from the public and finally to lay down and then he pursued in asking me for keys to the various compartments of the safe which I couldn't give him.
Q. And what did you say about the keys?

A. I said I didn't have any keys other than to my own drawer in the office and also he asked me for the key to the front door which I had and he obtained from me.
Q. Did he do anything with it?
A. He attempted to lock the front door, yes, sir.
Q. Did he lock it?
A. Yes, sir.
Q. Now, how much conversation did you have with him when you saw him on January 30th in the postal inspector's office?
A. Just verbally conversation as to—he was talking to Mr. Riddle and he didn't say much to me at all personally.
Q. But you overheard their conversation?
A. Yes, I did.
Q. And did you recognize anything during that conversation?
A. Yes, sir, I recognized the voice and his features and posture.
Q. Now, which man had the shotgun during the robbery?
A. Mr. Hanks. * * *"

cashed money orders taken at the time of the robbery, and was material to the issues. Ayash v. United States, supra; O'Dell v. United States, 10 Cir., 251 F.2d 704.

■ After his arrest, Hanks was released on bond. Notice was given of the date of trial. Hanks did not appear and his bond was forfeited. Thereafter he was arrested in Illinois and removed to Kansas for trial. The court allowed the prosecution to prove that Hanks had fled from the jurisdiction of the court immediately prior to the date of his trial. It is urged that the Bail Reform Act of 1966, 18 U.S.C. § 3150, amending former 18 U.S.C. § 3146, made bond-jumping, when the crime charged is a felony, a crime subject to a fine of $5,000 and imprisonment for five years. Bond-jumping was a crime before the enactment of the Bail Reform Act of 1966. 68 Stat. 747. But these statutes do not affect the admissibility of evidence of flight to establish guilt. Such evidence has frequently been held to be admissible. United States v. King, 2 Cir., 373 F.2d 813. See Burroughs v. United States, 10 Cir., 365 F.2d 431. The fact that the accused has jumped bail after indictment does not render evidence of flight inadmissible. See United States v. Accardi, 2 Cir., 342 F.2d 697, cert. denied 382 U.S. 954, 86 S.Ct. 426, 15 L.Ed.2d 359.

■ Without objection by the defense, the court submitted to the jury only the question of whether the accused was guilty or innocent of the greater offense defined in the statute. It is argued that the omission of an instruction on the lesser offense affected the substantial rights of Hanks and should be noticed by this court as authorized by Rule 52(b), F.R.Crim.P. Rule 30, F.R.Crim.P. requires that objections to instructions or omissions therefrom be made before the jury retires to consider its verdict or the error may not be raised on appeal. See Lucas v. United States, 10 Cir., 355 F.2d 245, cert. denied 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687; Beasley v. United States, 10 Cir., 327 F.2d 566, cert. denied 377 U.S. 944, 84 S.Ct. 1351, 12 L.Ed.2d 307. The information charged only the greater offense. The case was tried and submitted to the jury on this charge. The prosecution's evidence was directed toward proving that the robbery was accomplished by putting the life of Peterson in jeopardy by the use of a shotgun. There was no evidence of any other type of assault. We have considered the record as a whole and find no plain error affecting substantial rights of the accused as a result of the omission of an instruction on the lesser statutory offense.[3]

■ The jury was instructed that the failure of the defendant to testify did not create a presumption against him and that they must neither allow this to weigh against him nor in any manner enter into their deliberations. The defendant did not request the instruction and made no objection when it was given, but now contends that he was prejudiced by it. The trial court's instruction was cautionary in nature and in accord with 18 U.S.C. § 3481. Bellard v. United States, 5 Cir., 356 F.2d 437, cert. denied 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83; United States v. Garguilo, 2 Cir., 310 F.2d 249.

Affirmed.

---

3. There are decisions to the effect that an instruction on a lesser included offense should not be given unless there is evidence to justify it. Hansborough v. United States, 113 U.S.App.D.C. 392, 308 F.2d 645; Goodall v. United States, 86 U.S.App.D.C. 148, 180 F.2d 397, 17 A.L.R. 2d 1070; Burcham v. United States, 82 U.S.App.D.C. 283, 163 F.2d 761; State v. Hacker, 197 Kan. 712, 421 P.2d 40.