215 So.2d 618 (1968)
Hubert J. ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
Henry SHIVERS, III, Appellant,
v.
STATE of Florida, Appellee.
Nos. 1639, 1641.
District Court of Appeal of Florida. Fourth District.
November 19, 1968.
Lavon Ward, Public Defender, and Patrick O'Neal, Asst. Public Defender, Fort Lauderdale, for appellants.
Earl Faircloth, Atty. Gen., Tallahassee, and Charles W. Musgrove, Asst. Atty. Gen., West Palm Beach, for appellee.
BARNS, PAUL D., Associate Judge.
Each appellant has appealed pro se from adjudications of guilt and sentence for robbery. We affirm.
*619 After the entry of the pro se appeals, the trial court adjudged each defendant an indigent and appointed the public defender to represent each defendant in the prosecution of his appeal.
The defendants' attorney on this appeal has failed and neglected to state in his brief with his point argued any assignment of error giving rise to the point, as is his duty in compliance with F.A.R. 3.7, subd. f(4), 32 F.S.A., which rule requires that "Specific assignments of error from which the points argued arise should be stated * * *." In this case, this omission might be explained since none of his assignments of error are directed to any judicial ruling. Reversal on appeal is not to be expected in the absence of judicial error of the lower court assigned, stated and argued in appellants' brief. Professional advocacy requires that the judicial errors relied on for reversal should be stated in the brief with points argued even in the absence of a rule requiring it. Defective assignments of error are amendable.
The record has been read and it shows that Poismans, at gun-point, was forced into a Cadillac car by the defendant Shivers and forced to sit in the front seat between Shivers and the defendant Anderson, who drove. The back seat was occupied by four other Negroes. Then the car was driven about a mile to near a pawn shop and Poismans was robbed of twenty-five dollars and two rings forced from his fingers. His brown suitcase was also taken after the contents were thrown out into the rain. The defendant Anderson threatened him with a knife held against his throat, and the other four participated in the robbery in attempts to overcome the difficulty of removing the rings.
Poismans called the police by telephone, to whom he reported the robbery, and they took Poismans to jail to give him lodging for the night as he was a stranger in town, wet from the rain, and without dry clothing or money. Next morning, he returned to near the pawn shop where he had been robbed. While there, he saw two colored men enter the pawn shop with a brown suitcase. He then suspected the two men as his robbers, and went to a filling station and telephoned the police, after which the two suspects entered the same station. Then the police arrived and Poismans identified the two defendants as his robbers, and they were arrested by the officers.
Twenty minutes before trial, Poismans was asked to look into a jail cell where the defendants Anderson and Shivers were confined with two others and asked, "Can you identify them again", and stated, "We cannot arrest people if you are not very sure they are the two people." The defendant's attorney was not called or notified of this identification, nor were the defendants advised of it or given any warning of their rights to the assistance of an attorney on that occasion.
Appellants' attorney, the public defender, relies on United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, for reversal. These two cases were considered by the Supreme Court, together with Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. All three cases were decided on June 12, 1967. Wade and Gilbert were on direct appeal; Stovall was a habeas corpus case collaterally involving the same question as Wade and Gilbert; Stovall construed and determined the extent to which Wade and Gilbert should be applied, and held that they should be prospectively limited because the two cases established new rules of law, and not the mere enunciation and application of prior law as to the right of counsel at a police lineup for purposes of identification.
WADE CASE: On certiorari, the United States Supreme Court (in reviewing Wade v. United States, 5 Cir.1966, 358 F.2d 557) held: where the in-court *620 identification of Wade was by two prospective prosecuting witnesses who initially identified Wade as the bank robber at a police lineup after indictment and after seeing Wade on that occasion and before the lineup in custody of an officer, the lineup identification occurred on May 12, after the court had appointed counsel for Wade on April 26, 1965, and Wade was deprived of assistance of counsel at the lineup, a critical stage in his prosecution, it was error to deny defense counsel's motion to strike the courtroom identification, but the courtroom identification should not be excluded if based on observation of the accused other than the lineup identification when "a per se rule of exclusion of courtroom identification would be unjustified."

Police Lineup Identification  Courtroom Identification

Attorney Not Notified
The rule to be applied as stated in Wade is:
"We come now to the question whether the denial of Wade's motion to strike the courtroom identification by the bank witnesses at trial because of the absence of his counsel at the lineup required, as the Court of Appeals held, the grant of a new trial at which such evidence is to be excluded. We do not think this disposition can be justified without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification. See Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 79, n. 18, 695, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678. Where, as here, the admissibility of evidence of the lineup identification itself is not involved, a per se rule of exclusion of courtroom identification would be unjustified. See Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307. A rule limited solely to the exclusion of testimony concerning identification at the lineup itself, without regard to admissibility of the courtroom identification, would render the right to counsel an empty one. The lineup is most often used, as in the present case, to crystallize the witnesses' identification of the defendant for future reference. We have already noted that the lineup identification will have that effect. The State may then rest upon the witnesses' unequivocal courtroom identification, and not mention the pretrial identification as part of the State's case at trial. Counsel is then in the predicament in which Wade's counsel found himself  realizing that possible unfairness at the lineup may be the sole means of attack upon the unequivocal courtroom identification, and having to probe in the dark in an attempt to discover and reveal unfairness, while bolstering the government witness' courtroom identification by bringing out and dwelling upon his prior identification. Since counsel's presence at the lineup would equip him to attack not only the lineup identification but the courtroom identification as well, limiting the impact of violation of the right to counsel to exclusion of evidence only of identification at the lineup itself disregards a critical element of that right.
"We think it follows that the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441. `"[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).' See also Hoffa v. United States, 385 U.S. 293, 309, 87 S.Ct. 408, 17 L.Ed.2d 374. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant *621 prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time beween the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.
"We doubt that the Court of Appeals applied the proper test for exclusion of the in-court identification of the two witnesses. The court stated that `it cannot be said with any certainty that they would have recognized appellant at the time of trial if this intervening lineup had not occurred,' and that the testimony of the two witnesses `may well have been colored by the illegal procedure [and] was prejudicial.' [Wade v. United States] 358 F.2d, at 560. Moreover, the court was persuaded, in part, by the `compulsory verbal responses made by Wade at the instance of the Special Agent.' Ibid. This implies the erroneous holding that Wade's privilege against self-incrimination was violated so that the denial of counsel required exclusion.
"On the record now before us we cannot make the determination whether the in-court identifications had an independent origin. This was not an issue at trial, although there is some evidence relevant to a determination. That inquiry is most properly made in the District Court. We therefore think the appropriate procedure to be followed is to vacate the conviction pending a hearing to determine whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence was harmless error, Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, and for the District Court to reinstate the conviction or order a new trial, as may be proper. See United States v. Shotwell Mfg. Co., 355 U.S. 233, 245-246, 78 S.Ct. 245, 253, 2 L.Ed.2d 234."
Adhering to Wade rule, Gilbert v. California, supra, held that when the in-court identification has a source independent of an illegal police lineup identification, then it does not follow that in-court identification is per se to be excluded:
"The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error. United States v. Wade, supra. We there held that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup. However, as in Wade, the record does not permit an informed judgment whether the in-court identifications at the two stages of the trial had an independent source. Gilbert is therefore entitled only to a vacation of his conviction pending the holding of such proceedings as the California Supreme Court may deem appropriate to afford the State the opportunity to establish that the in-court identifications had an independent source, or that their introduction in evidence was in any event harmless error."
Unlike Wade and Gilbert, the record in this case permits an informed judgment by this court that the in-court identification by Poismans had a source wholly independent of the peep-hole observation of the defendants in the jail cell with two others; they were in the jail cell because of Poismans' prior dependable identification which was only confirmed by the peep-hole observation and served to satisfy the prosecution that the men in the cell were the men who Poismans claimed to have robbed him.

RECORD OF APPEAL: DUPLICATION NOT AVOIDED
Although the defendants were charged and tried jointly the trial judge, with *622 propriety entered separate judgments and sentences, then each defendant entered his pro se appeal, after which the trial court appointed the public defender to prosecute the separate appeals on behalf of each defendant. This has resulted in two original transcripts of the trial proceedings and four carbon copies when one original and two copies would have been sufficient. The public defender did not move for a consolidation for the record on appeal purposes, as he might have done.
The extra expense to the county occasioned by the needless duplications in this case and under many other circumstances could be avoided by the Supreme Court promulgating Appellate Court Rules as follows:
APPEALS
"Rule  Joint and Several Appeals and Petitions for Certiorari.

"(a) Joint and Several Appeals and Petitions for Certiorari: Summons and Severance Abolished. Parties interested jointly, severally, or otherwise in an order, decree or judgment may join in an appeal therefrom or a petition for a writ of certiorari thereto; or, without summons and severance, any one or more of them may appeal or petition separately or any two or more of them join in an appeal or petition."
Note: Conforms to U.S. Supreme Court Rule 46 and Fed.R.C.P. 74.
"(b) Consolidated Trials: When two or more defendants are jointly tried or when two or more cases are consolidated for trial or hearing, and one or more parties in two or more cases are entitled to appeal, appeals may be taken and prosecuted jointly or severally or jointly and severally to the extent elected, without prejudice to have appeals in each case treated severally on review.
"(c) Misjoinder of Appeals. Misjoinder of appeals is not ground for dismissal. Any appeal may be severed and proceeded with separately.
"(d) Joinder After Appeal. If two or more parties in a case are entitled to appeal, they may join in appeal after filing separate notices of appeal, and they may thereafter proceed on appeal as a single appellant."
RECORD ON APPEAL
"Rule  Composition of.

"(a) One Record For Several Appeals. When more than one appeal is taken to the same court from the same order, judgment or decree, a single record on appeal containing all the matter designated or agreed upon by the parties, without duplication, is sufficient."
Note: Cf. Fed.R.C.P. Rule 75(k) (1963).
"(b) Record in Criminal Cases. When more than one appeal is taken to the same court by different parties after being jointly tried for any criminal offenses, a single record on appeal shall be prepared containing all the matters designated, without duplication."
Note: This rule will avoid duplication and save costs now borne by the county taxpayer when indigent defendants prosecute separate appeals.
The adoption of such proposed rules would save costs and would tend to avoid the frustration of timely appeals and permit timely appeals to be determined on the merits, which has not been the result in some instances.
The judgment appealed from is affirmed.
Affirmed.
OWEN, J., concurs.
CROSS, J., concurs in conclusion.