221 So.2d 235 (1969)
Horace AVIS, Appellant,
v.
STATE of Florida, Appellee.
Norris EPPS, Appellant,
v.
STATE of Florida, Appellee.
Eugene WOMMOCK, Appellant,
v.
STATE of Florida, Appellee.
Nos. J-483, K-16, K-14.
District Court of Appeal of Florida. First District.
April 10, 1969.
*236 Robert E. Pierce, Public Defender, and Landis V. Curry, Jr., Asst. Public Defender, for appellants.
Earl Faircloth, Atty. Gen., Wallace E. Allbritton and George R. Georgieff, Asst. Attys. Gen., for appellee.
SPECTOR, Judge.
Appellants were convicted by a jury on charges of armed robbery. The three cases were consolidated for trial and on this appeal.
Appellants raise four questions on which they rely for reversal. First, whether the trial court correctly permitted the jury to consider testimony regarding in-court identification of the appellants where said appellants had previously been viewed in a lineup. Second, whether the tangible evidence seized from the automobile owned by the appellant, Wommock, was admissible in evidence where the seizure occurred without a search warrant or the automobile owner's consent. Third, whether the trial court erred in admitting evidence that appellants committed separate similar crimes. And lastly, appellants raise the question of the sufficiency of the evidence going to the identity of appellant Epps to sustain his conviction on the robbery charged herein.
After conviction, appellants Avis and Wommock were sentenced to life imprisonment and the third appellant, Epps, was sentenced to a term of ten years. All of the appellants were represented at trial by the public defender. The testimony adduced at the trial revealed that in the early morning hours, approximately 3:00 A.M., of July 25, 1967, the appellants drove into a gasoline service station adjacent to one of the exits from interstate highway 75 in Marion County and robbed the attendant at gunpoint. They were apprehended shortly after the robbery, taken to the county jail in Ocala, placed in a lineup *237 and were there identified by the service station attendant. The lineup identification occurred some 45 minutes after the robbery, so it can be seen that all of the evidentiary facts here being considered occurred in a relatively short time.
The appellants, Avis and Wommock, took the stand and testified at the trial. Appellant Epps did not testify. During their testimony, Avis and Wommock admitted that they along with the third appellant, Epps, were present during the commission of the robbery, but it was their testimony that they were not in any way responsible for or connected with the robbery. Instead they claimed that as they were driving toward Gainesville from Webster, a nearby community, along interstate 75, they picked up two hitchhikers, one of whom was carrying a one-gallon gasoline can. The two hitchhikers apparently had run out of gas. The appellants, Wommock driving, permitted the two hitchhikers to get into the two-door, bucket-seated car, one in front and one in back, and proceeded to the service station where the robbery occurred. Appellants' version of the incident was that the two hitchhikers committed the robbery and appellants watched as it occurred. The hitchhikers then got in the car with appellants and ordered them to drive off. A few minutes later while the alleged unwilling getaway car was speeding from the scene, they were passed by a sheriff's car coming from the opposite direction. The sheriff's car turned and came after them with lights and sirens going full blast. Upon noting that their capture was imminent, appellants' version continued, the hitchhikers ordered them to slow down. Appellants followed the given instructions and the two hitchhikers jumped out of Wommock's car while it was still moving and thus made their escape only a short distance from where appellants were apprehended. Appellants' explanation for the gun and the money bag that were found in the car is that those items were left behind by the hitchhikers in their haste to make their departure.
In contrast to the appellants' version of what had occurred, Kenneth Eugene Oliver, the service station attendant and victim, stated that only three men were in the car; two in front, one in back. The two in front, apparently Wommock and Avis, initiated the robbery with Wommock attracting Oliver's attention by feigning a question about a road map he held in his hand while the other, Avis, came out of the front passenger seat and stuck a gun in his ribs. One of this duo announced in typical fashion, "Give me your money and don't try nothing or I'll shoot you." They then took the attendant into the office where, under the continuing threats of mayhem, Oliver finally found the keys to one safe, opened it, handed the money bag and some coins to his captors. Not being content with that, they insisted that Oliver open the bottom safe, but he could not because the manager had the key to that. In Oliver's words, "I was kneeling down on my knees and I just kept pleading with them that I didn't have the keys." Being disappointed at Oliver's failure to have the key to the bottom safe, Wommock told Avis and Epps, who had by then, Oliver testified, left the car and joined his two companions in their venture, to take Oliver in the back and shoot him so that they could leave. Oliver was taken into the oil room, thrown to the floor, and one of them whom Oliver identified as Epps kicked him in the mouth. There ensued a discussion among the appellants during which they deliberated about shooting their victim as he listened in justified fear. Appellants then left the scene and shortly thereafter Oliver called the sheriff's department.
The principal point raised by appellants is aimed at the legality of the in-court identification given by Oliver because the latter had viewed these appellants in a lineup at the jail shortly after they were apprehended. This contention is grounded on the United States Supreme Court's decisions in United States v. Wade and Gilbert v. California, reported in 388 U.S. 218, *238 87 S.Ct. 1926, 18 L.Ed.2d 1149 and 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, respectively. The substance of these cases hold that an in-court identification is impermissible in criminal trials if the identification was induced by a lineup or similar procedure which violated the accused's constitutional rights. We do not construe Gilbert and Wade to hold that an in-court identification is automatically tainted where there has been a previous lineup identification of the defendant without the presence of defendant's counsel. The United States Court of Appeals for the Fifth Circuit in Wade v. United States, 358 F.2d 557, held that the holding of a lineup in the absence of the accused's counsel, vel non, violated his Sixth Amendment right to counsel. However, that holding was reversed by the United States Supreme Court in United States v. Wade, supra, where the court though acknowledging that the defendant is entitled to the presence of defense counsel at the lineup held that even though evidence of the lineup identification might if standing by itself be inadmissible, a courtroom identification would not be excluded if it were based directly on an observation occurring at some other time. We think the victim Oliver's courtroom identification of these appellants is admissible in the case at bar because the basis for such courtroom identification is not limited to the questioned lineup identification. Rather, Oliver's testimony shows that his identification is based on his observation of the appellants at the scene of the crime during the commission of the crime. In other words, had the victim testified that he did not know whether the defendants were the people who robbed him but that he was sure that they were the people in the lineup, then obviously such courtroom identification would come within the proscriptions enunciated by Wade and Gilbert. In Wade, the United States Supreme Court remanded the case for a determination of whether the in-court identifications had an origin independent from the lineup. In the case at bar, there is no necessity for such a course to be followed for the record before us of the victim Oliver's testimony demonstrates that the in-court identifications of these appellants had an origin independent from the lineup. Accordingly, we hold that appellants have failed to demonstrate the commission of any error arising from their in-court identification which falls within the proscriptions of Wade and Gilbert, supra.
The next point raised by appellants is that evidence seized from appellant Wommock's vehicle was seized pursuant to an unlawful search and seizure in violation of appellants' Fourth Amendment rights. Specifically, the item of evidence to which appellants objected at the trial was a radio taken from Wommock's car which was identified by a witness as belonging to him and as having come from the office of the service station that was robbed. Appellants' objection to the admission of the radio in evidence is based on a deputy sheriff's testimony to the effect that he had taken the radio from Wommock's car without a search warrant at the sheriff's office after appellants had already been brought in and confined at the jail. Appellants rely on the United States Supreme Court's decision in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, as authority for the proposition that a search warrant should have been obtained by the officers before they searched the car. While conceding that a lawful search might have been conducted at the scene of the apprehension as being incident to the arrest of appellants, they contend that the fault here lay in the fact that the radio was not seized at the scene of the arrest and therefore incident to it. Rather, they point out, this seizure occurred after the car had been brought in to the sheriff's office and after the apprehension and arrest of appellants had been completed, they by then having been securely confined within the jail. Appellants *239 misconceived the legal effect of the facts testified to by the officer connected with the radio. His testimony respecting this exhibit was that he retrieved it from the front seat of the car, after having been told by one of the arresting officers that he, the arresting officer, had observed the radio lying openly in the front seat of the car out at the scene of the arrest. Obviously, the arresting officer himself could have seized the radio at the time of the arrest for then it would have been nearly contemporaneous with the arrest and certainly incident to it. Since it was openly visible to him, no search was necessary to discover it. Indeed, Officer Stevens conducted no search of the car at the sheriff's office. He simply was sent to the car to retrieve an item that had already been discovered lying openly about the car by the arresting officer. These facts seem to be controlled by the decision in Garcia v. State, 196 So.2d 761 (Fla.App.). In any event, even were we to consider the retrieval of this evidence as being pursuant to a search, said search at worst was only a second search not so remote in time or place with respect to the arrest and thus permissible under the decision of the court in Dolan v. State, 185 So.2d 185 (Fla. App.3d 1966). Accordingly, we hold that the alleged error assigned under this point has not been made to appear.
The third question raised for our consideration is the legality of testimony adduced at the trial over appellants' objection which fingered them as the perpetrators of several other service station robberies occurring at about the same time at locations connected by the same interstate highway ranging from Valdosta, Georgia; Micanopy, Florida; and 19 miles from Belleview. This testimony of similar crimes was given by the attendants of service stations who testified that they were attendants at service stations robbed by appellants. We perceive no defect in the reception of this testimony since we deem it to be admissible as similar fact evidence tending to show pattern, motive and intent within the principles announced by the Supreme Court in Williams v. State, 110 So.2d 654, and more recently in Hawkins v. State, 206 So.2d 5 (Fla. 1968). In the latter case, as in the case at bar, the evidence of other crimes which was permitted to be introduced against Hawkins related to other service station robberies and murders perpetrated along this same interstate highway.
The last question raised for our consideration is the sufficiency of the evidence as to the identity of appellant Epps to sustain his conviction in this case. Appellant Epps relies on the attendant Oliver's uncertainty that Epps was the third person in the back of the car at the time it drove up. However, there seems to be no question that Epps was positively identified by Oliver as the person who kicked him in the face in the back of the station as the three appellants were deliberating on whether to shoot their victim prior to departing. Moreover, the other two appellants themselves testified that Epps was present at the scene of the robbery with them. Accordingly, the jury had ample evidence upon which it could find that Epps was present. Thus, the only question left up in the air was that of Epps' participation in the robbery. As to this, Oliver's testimony was sufficient.
The only question presented by this entire record as to the sufficiency of the evidence is whether Oliver's version of the robbery implicating these appellants should have been believed by the jury or whether the appellants' version of the robbery, putting it off on the escaped hitchhikers, should have been believed. Obviously, the jury could have believed the latter version. But, it did not.
Affirmed.
WIGGINTON, C.J., and CARROLL, DONALD K., J., concur.