STATE of Iowa, Appellee,

v.

Bryan ESSARY, a/k/a Byron Merrill Essary, Appellant.

No. 53766.

Supreme Court of Iowa.

May 5, 1970.

McCarthy & Hart, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., and Edward N. Wehr, County Atty., Davenport, for appellee.

MOORE, Chief Justice.

Defendant, Bryan Essary, was charged, tried, convicted and sentenced for the crime of robbery with aggravation, in violation of Code section 711.2 and has appealed. We affirm.

Defendant asserts the trial court erred in failing to sustain his motion to strike the testimony of Ivan Stiff and Thomas Ondracek identifying him as a participant in the armed robbery of the Probstei Inn on February 2, 1968 and thereby denied him a fair trial.

Defendant states in his brief there is only one question in this case—"Can a witness be permitted to make an identification of an accused in court if his testimony was preceded by an improper pretrial viewing of some sort?" He argues each of the two

witnesses had defendant pointed out to him at the police station where a lineup was not used.

I. Since filing òf defendant's brief and argument in this case we have in State v. Wisniewski, Iowa, 171 N.W.2d 882, considered and discussed at length the authorities on which he relies, namely, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

■ We need not repeat what we said in Wisniewski except this from page 884 of 171 N.W.2d: "It should be noted that an illegal out-of-court identification procedure does not necessarily bar identification testimony by that witness at trial. It merely precludes the use of the 'tainted' identification and requires clear. and convincing proof that any identification made at trial had an independent origin and does not depend for its validity upon the illegal lineup procedure." In addition to Wade and Gilbert, cited therein see, Fitts v. United States, 5 Cir., 406 F.2d 518, 519; State v. Cannito, 183 Neb. 575, 162 N.W.2d 260, 261; Anderson v. State, Fla.App., 215 So.2d 618, 620, 621; Shepard v. State, Fla. App., 213 So.2d 11, 12; Tyler v. State, 5 Md.App. 158, 245 A.2d 592, 595, 596; State v. Carrothers, 79 N.M. 347, 443 P.2d 517, 519.

■ II. The rule is now well established that each case must be considered on its own facts and that convictions based on eyewitness identification at trial following a pretrial identification will be set aside only if the pretrial identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. In such an event, the defendant would be denied due process of law. A claim such as made by defendant here must be evaluated in light of the totality of the surrounding circumstances. Simmons v. United States, 390 U.S. 377,

379, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247, 1253; Stovall v. Denno, supra, 388 U.S. 293, 301, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1206; Hanks v. United States, 10 Cir., 388 F.2d 171, 174; Caruso v. United States, 2 Cir., 406 F.2d 558, 559; Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, 1106.

III. Study of the entire record, including the trial transcript, discloses that about 12:45 a. m. February 2, 1968 four men entered the Probstei Inn located in Davenport, two coming in the east door and two the west door. One of each pair was armed with a pistol. The proprietor, Ivan Stiff, was behind the bar and there were three customers and a bartender, recently off duty, present. They said "This is a stickup" and told everybody present to stand up and put their hands on the bar which all did except Victor Schneckloth, one of the customers, who was then in the rest room. When he returned therefrom he was thrown to the floor. After pulling down the front shades of the tavern those standing with their hands on the bar were ordered to put their wallets on the bar. One of the robbers as he picked up each wallet searched and took from the victim certain personal property. After being searched each was ordered to lie on the floor. After searching those in front they went behind the bar, took Stiff's billfold, searched him, ordered him to lie on the floor, rifled the cash register, took certain personal property and Stiff was questioned about additional money and the keys to his automobile.

After completing their activities behind the bar three of the robbers went out the door. The fourth asked the location of the telephone, took a shot at it and then left. Some of the victims rushed to a window and observed the four men get into a Pontiac automobile and drive away. The police were immediately notified. Each robber at the scene attempted to conceal part of his face. Two wore black dickey scarves over the lower part of his face. One wore large goggles. A fourth, the tallest of the group, had over his head a large paper sack with

eye and mouth holes. He had trouble keeping it on.

A few minutes after the robbery two Rock Island, Illinois police officers observed a Pontiac automobile, which fit the description they had been alerted to watch for, come off the Mississippi River bridge into Rock Island. It was being driven at a high rate of speed and after a short pursuit was stopped by the officers. There were four men in the Pontiac. They fit the description of the four that had been described as those who held up the tavern. Defendant Essary occupied the right rear seat. They were put under arrest and the automobile searched thereafter with the written permission of the driver.

The officers upon searching the Pontiac found two guns under the front seat, wallets, a trucker's pouch, bills and coins under both seats, coins in the cigarette wells and several items which were identified on trial as being used or taken in the Probstei Inn robbery. Two black dickies were found on the right rear floor and a watch taken from one of the victims was found on the rear seat of the automobile.

On direct examination Stiff testified from the time of their entry he concentrated in a study of the robbers. He had approximately five minutes to observe and study them as he stood with his hands on the bar while the other victims were being searched and later when they came behind the bar and searched him. He stated while on the floor he was on his back and continued his observations as they rifled the cash register and took other personal property from behind the bar. He stated defendant Essary had trouble keeping the paper sack over his head, "it didn't stay on a few times", it had three holes in it, was loose and that from his position on the floor he got a good look at Essary's face. Essary had talked to Stiff and asked where there was more money. Stiff made a positive in-court identification of Essary.

Stiff also described the wearing apparel and disguises worn by the robbers. He particularly noticed one had a thin line mustache and another had a peculiar looking nose—"sort of a bulbous end". He identified the two guns found in the Pontiac as those used in the robbery and identified his billfold, a trucker's pouch, his car keys and other personal property taken by the robbers.

On cross-examination Stiff testified that three or four days after the robbery he was called to the Davenport City Hall and told by Detective Fee—"I am going to take you around here to a window and have you look in and see if you can recognize anybody." He was then taken to the door of the Davenport Municipal Court room and Fee said "There they are in there." When Stiff looked through the glass of the closed court room door he observed at least five persons. Two were standing where he later learned was in front of the bench. He was able to see only a part of the court room when he looked through the glass. He said to Fee, "Those are the men." He identified defendant Essary and another who he later learned was Gary Adams. Essary was wearing the same clothing as observed by Stiff at the robbery scene.

Thomas Ondracek related the events of the robbery including the taking of his billfold, a check from his employer and five dollars cash. His testimony on direct examination includes:

"Q. And would you describe to the jury the man that came in first? A. Well, he was about five foot, ten; and he had a hat or cap, kind of a fishing type of hat, and a large pair of goggles like motorcycle goggle, kind of orange, that covered most of his face.

"Q. And did he have any other distinguishing features on him? A. He had a mustache, a pencil-type mustache.

"Q. Was he carrying anything? A. Yes, he had a gun in his hand.

"Q. And could you describe that to the jury? A. Well, it was a small automatic

type of a revolver or pistol, and it was white or shiny sides on it, I could see. * *

"Q. Now, did a man follow him in? A. Yes.

"Q. And would you describe that man and how he was dressed, to the jury? A. Well, this I didn't pay too much attention to the one that was behind him, or the other two on the other side; my attention was more on the first one. Throughout, throughout the incident I was glancing and I just—I don't know which one was which; I know two of them had dickey-type of sweaters up over their nose and one had a paper sack on his head; but I don't know which one came in behind him. * * *

"Q. Now, did you have occasion to see any of these men later on that evening? A. Yes; I saw them very shortly after that in Rock Island Police Station.

"Q. And whom did you see over there? A. Well, I identified the first one, of course, with the mustache; and there was three other ones with him.

"Q. And do you see one of the three other ones that was with him here in the courtroom? A. Yes, I do.

"Q. And would you point him out to the jury, please? A. This is the gentleman right over here.

"Q. And how is he dressed? A. With the green sport shirt on and glasses.

"MR. BERGER: Let the record show that the witness has indicated the defendant, Mr. Essary."

Ondracek's cross-examination includes:

"Q. Now, as I recall your testimony, both here and on preliminary examination, the only man that you got a good look at at the tavern that night, and the night and early morning of February 2nd, was the man with the dark goggles and the mustache; isn't that correct? A. Right.

"Q. The other fellows you really didn't look too closely at, isn't that true? A. That's right.

"Q. And you would certainly not attempt to make an identification of anybody except this man with the goggles and the mustache this fellow had, isn't that true? A. Positively.

"Q. Yes. Now, you did say that, later, that night I believe that you identified Byron Essary in Rock Island; am I correct in quoting you to that? A. I saw him with Riedel—

"Q. Now—A. The other one—

"Q. I would like to go into that with you. Where did you see Byron Essary? A. In the Rock Island Police Station.

"Q. And whereabout in the Rock Island Police Station? A. I guess in the booking station, they call it.

"Q. Were they in a lineup there? A. No; they were just standing in the—

"Q. Were you ever asked to view them in the lineup? A. No.

"Q. And did anybody point out Byron Essary to you at the Rock Island Police Station? A. Just as being the four people that were caught.

"Q. As being one of four people? A. Right.

"Q. And of course you now base your identification then upon what you saw at the Rock Island Police Station; isn't that correct? A. That's right.

"Q. And not upon any observation you made at the tavern that night? A. No.

"Q. Did some policeman tell you those were the four men? A. The four men that 'had your stuff'.

"Q. They are the four men that held up the tavern? A. No, the four men that had our stuff.

"Q. That had your stuff. And outside of that you wouldn't attempt to make iden-

tification, would you, of anybody, except the one man? A. Just the one.

"Q. Gary Adams, is that correct? A. Right."

At the close of Ondracek's testimony defense counsel moved to strike the identification testimony of Stiff on the basis it was made pursuant to the showing of Essary in the Davenport Municipal Court room in violation of his constitutional rights under the Fifth and Sixth Amendments to the Constitution of the United States. Counsel moved to strike the identification testimony of Ondracek on the same constitutional grounds and therein stated: "That if any identification was made by the witness, Thomas Ondracek, of the defendant Byron Essary, it must also necessarily be based upon his being shown and pointed out the defendant Byron Essary in the Rock Island Police Station as one of the men, who was at the tavern of Ivan Stiff at the time the alleged robbery occurred; and that the identification was not made in any lineup."

After considering defendant's cited cases of Wade, Gilbert, Stovall and Simmons the trial court denied defendant's motion to strike the identification testimony of Stiff and stated: "The witness Ondracek did not identify the defendant as one of those present in the tavern at the time of the alleged robbery, and the motion therefore as to the application to his testimony is overruled."

■ We agree with the rulings of the trial court. The in-court identification of defendant by Stiff has an independent origin and does not depend for its validity upon the alleged illegal viewing of defendant in the municipal courtroom. Under the record we do not reach the question of whether that viewing was a "tainted" identification.

The record amply supports the trial court's finding Ondracek had not made an in-court identification of defendant as one of those present at the robbery.

Defendant's assigned errors are untenable. He was afforded a fair trial.

Affirmed.

LARSON, STUART, MASON, BECKER, REES and UHLENHOPP, JJ., concur.

LeGRAND and RAWLINGS, JJ., dissent.

LeGRAND, Justice (dissenting).

I agree the identification testimony of Ivan Stiff was based on an independent origin and was properly admitted.

However, I dissent on the ground the admission of testimony by Thomas Ondracek, whether it amounted to an in-court identification or not, was error. Defendant was described by Ondracek as one of the "four that were caught" and as one of the "four that have [our] stuff."

After this testimony it is futile in my opinion to say, as the majority does, that Ondracek did not identify defendant as one of those committing the robbery. I believe his testimony was designed to—and did—establish defendant was one of the four participants in the crime. The evidence by which this was done was not properly admissible by any standard. It was based entirely on an improper police identification procedure. It was prejudicial and I would reverse for a new trial.

RAWLINGS, J., joins in this dissent.