423 So.2d 627 (1982)
Edgar C. PLATEL, Appellant,
v.
MARONDA HOMES INC. OF FLORIDA, Appellee.
No. 82-338.
District Court of Appeal of Florida, Fifth District.
December 22, 1982.
Edgar C. Platel, in pro. per.
Scott J. Johnson of Maguire, Voorhis & Wells, P.A., Orlando, for appellee.
COBB, Judge.
The appellant, Edgar C. Platel, plaintiff below, appeals from entry of a final summary judgment granted against him by the trial court. Platel's amended complaint, based on breach of contract, breach of warranty, and fraudulent trade practices, claimed that the defendant, Maronda Homes Inc. of Florida (Maronda), contracted to build for him a house with 1,000 square feet, but actually built one with only 911 square feet. Platel also claimed poor workmanship in that the kitchen linoleum needed replacing and a chip in the bathroom *628 sink needed fixing.[1] He sought compensatory and punitive damages. The issue is whether the trial court erred by granting a final summary judgment against Platel. We hold it did and reverse.
The parties signed a contract on December 5, 1979, whereby Maronda contracted to build a house, known as the "Belmont" model, for $39,105, contingent upon Platel obtaining an FHA-235 mortgage in the amount of $37,900 on or before the first day of February, 1980. Nothing in the written contract referred to the square footage of the house. The contract provided that the seller was to supply the buyer with a copy of the plans and specifications of the plan type for the buyer's approval. The buyer was to acknowledge such approval in writing within five days of receipt thereof from the seller. Platel financed the purchase through Allstate Enterprises Mortgage Corporation, with FHA financing.
Platel did not see the plans and specifications at the time of the signing of the contract, nor at any time prior to closing. At the time of the contract he had not seen a sample model of the home. On April 14, 1980, closing was held and Platel took possession of the house. At deposition, Platel was asked the basis of his understanding that the house was to have 1,000 square feet. His answer was:
The basis, I originally was told by the sales people that sold me the house that the house was going to have 1,100 square feet. I only found out at settlement [closing], which I didn't have a set of plans at settlement [closing], I found out from the FHA Commitment that it stated on there 1,000 square feet of improved floor area, which is Exhibit D in the complaint... . That's the first time I knew that the plans stated 1,000 square feet. I had been told orally it would be 1,100 square feet by the Maronda salesman.
The FHA Commitment, referred to by Platel as the document he viewed at closing, showed the improved floor area of the house to be 1,000 square feet. The appellee argues, in support of the summary judgment, that Platel has no claim whatsoever against the defendant with respect to the contents of the FHA form, since this concerned a contract solely between Platel and his mortgage company, Allstate. Defendant asserts that it had no responsibility in connection with this form. This misses the point because the information in that form, based on the deposition of Platel, inferentially had to come from Maronda.
After Platel took possession of the home in April, 1980, he received from Maronda in October, 1980 a copy of the plans for the "Belmont" model. Page 3 of the plans shows an overview of the floor plan with dimensions. At the bottom of page 3 is the statement, "Living area  1,000 square feet." After receiving the plans, Platel measured the house and determined that the measurement of square footage in the plans was based on the outside perimeter of the exterior walls of the house. Platel measured the house using the inside perimeter of the walls and calculated the square footage at 911 square feet.
Maronda claims that all it contracted to do was build a home in accordance with the plans for the "Belmont" model, and that it did so. Maronda states that any dispute as to how the square footage in the "Belmont" model is measured is irrelevant to the issue. As we see it, the issue is not merely a dispute of the proper method of measurement, but whether or not it was represented to Platel, prior to closing in April, 1980, that he was buying a house with at least 1,000 square feet of living area, as opposed to one with merely some 911 square feet of living area. It is clear to us that living area does not encompass the thickness of exterior *629 walls. Because the written contract of the parties does not specify square footage of the house, and the plans were not furnished to Platel prior to closing showing the dimensions of the house, he was entitled to rely upon the verbal representations of the Maronda salesman that the house would have 1,100 square feet of living area. (He waived 100 square feet of that living area by having available to him prior to closing the FHA information that the living area was only 1,000 square feet.) Had Maronda furnished Platel with the plans and specifications prior to closing, Platel might have been deemed to have waived any measurement dispute by proceeding to closing, since the plans and specifications were in accordance with the house actually constructed. This, however, was not the case.
Appellee argues in its brief as follows:
The only contract plaintiff had with defendant was that the house would be built to the plans and specifications, and the undisputed testimony was that the house was built in accordance with those plans, regardless of how plaintiff would have measured square footage.
This statement is true if we refer only to the written contract; but, it is not true if we accept, as we must for summary judgment purposes, Platel's statement that the only representation to him prior to closing as to square footage was the verbal one by the salesman and the written representation in the FHA Commitment.
The appellee also attempts to sustain the summary judgment on the basis that Platel has failed to show that he was damaged by receiving a house smaller than he thought he had contracted for. This argument erroneously attempts to shift the burden of proof at summary judgment to the non-movant. If Platel were to fail to establish damages at trial, he would be subject to a directed verdict (or involuntary dismissal in a non-jury trial). It was not his burden to come forward with proof of damages at the summary judgment hearing. Certainly, there is an available inference that damages result from receiving a house approximately 1/10th smaller in size than that for which a party contracts. That inference is sufficient to survive a summary judgment motion in the absence of direct proof to the contrary. See Landers v. Milton, 370 So.2d 368 (Fla. 1979).
Accordingly, the summary judgment below is reversed and this cause is remanded for further proceedings in accordance with this opinion.
REVERSED and REMANDED.
SHARP, J., and SMITH, C. McFERRIN, III, Associate Judge, concur.
NOTES
[1] After filing the amended complaint, Platel sold the subject house to a third party "as is" for the amount of $38,800, including assumption of an FHA first mortgage.

In his deposition, Platel has admitted that he makes no further claim for the repairs as alleged in his amended complaint in regard to the linoleum and bathroom sink. Therefore, the remaining dispute is the claim as to square footage.