443 So.2d 1017 (1983)
Heather A. LYNCH, Appellant,
v.
Adel D. TENNYSON, Richard A. Tennyson, American Liberty Insurance Company, the City of Casselberry and United States Fidelity & Guaranty Company, Appellees.
Nos. 82-1237, 82-1563.
District Court of Appeal of Florida, Fifth District.
December 15, 1983.
Rehearing Denied January 23, 1984.
Paul H. Bowen of Swann & Haddock, P.A., Orlando, for appellant.
Maron E. Lovell of Maron E. Lovell, P.A., Orlando, for appellees Adel D. Tennyson, Richard A. Tennyson, and American Liberty Ins. Co.
H. David Luff of Sanders, McEwan, Mims & McDonald, Orlando, for appellees *1018 City of Casselberry and U.S. Fidelity & Guar. Co.
COBB, Judge.
This appeal arises from a rear-end vehicle collision in Seminole County on May 16, 1980. Since the plaintiff/appellant, Heather Lynch, suffered an adverse summary judgment on the liability issue below, we review the record from the most favorable factual basis inferentially available to her.
Lynch was travelling east on Red Bug Road following an automobile driven by A. Tennyson, with a distance of some four to five car lengths between them. Tennyson stopped suddenly, having collided with the rear of the car in front of her. The traffic ahead of Tennyson had stopped because an emergency vehicle, a fire engine from the City of Casselberry, had pulled out into Red Bug Road in front of a car preceding Tennyson and Lynch. Lynch skidded into Tennyson. No brake lights were ever apparent to Lynch, according to her sworn statement.
The issue presented to the trial court at summary judgment hearing was whether or not Lynch was the sole cause of the last collision, as a matter of law, thereby discharging Tennyson and Casselberry from liability. It is beyond dispute that Lynch was negligent as a matter of law, and such has been conceded on appeal. Cf., Baughman v. Vann, 390 So.2d 750 (Fla. 5th DCA 1980).
A summary judgment is not proper if the facts and evidence are reasonably susceptible of conflicting inferences. Rogers v. Parker, 241 So.2d 428 (Fla. 2d DCA 1970). This court has recently stated that:
The movant for a summary judgment has the initial burden of demonstrating the non-existence of any genuine issue of material fact. Once he tenders competent evidence to support his motion, the opposing party must come forward with counter evidence sufficient to reveal a genuine issue. Landers v. Milton, 370 So.2d 368 (Fla. 1979). Courts will not be disposed to grant a summary judgment unless a movant can show unequivocally that there was no negligence, or that the plaintiff's negligence was the sole proximate cause of the injury. Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977). Similarly, a question of proximate cause must generally be resolved by the trier of fact from all the facts and circumstances in a particular case, and where questions of negligence or contributory negligence are close, any doubt should always be resolved in favor of a jury trial. McCabe v. Walt Disney World Co., 350 So.2d 814 (Fla. 4th DCA 1977). See Helman v. Seaboard Coast Line Railroad Co., 349 So.2d 1187 (Fla. 1977). Negligence must be shown to be a proximate cause of the injury, and proximate cause does not equal possible cause, nor does it cover every possibility that may indeed occur. Stanage v. Bilbo, 382 So.2d 423 (Fla. 5th DCA 1980).
Goode v. Walt Disney World Co., 425 So.2d 1151, 1154 (Fla. 5th DCA 1982). It is not necessary at a hearing on summary judgment for the non-moving party to produce evidence to prove its case as it would at trial; available inferences may allow the case to survive a motion for summary judgment. Platel v. Maronda Homes, Inc. of Florida, 423 So.2d 627 (Fla. 5th DCA 1982).
From the facts in this case, there is an available inference that Tennyson was driving too close to the car in front of her and, consequently, came to a sudden and unexpected stop when she ran into its rear, thereby contributing to some degree to the second impact by Lynch's vehicle. See Bialek v. Lensen, 421 So.2d 654 (Fla. 1st DCA 1982); Whitworth v. Cuchens, 397 So.2d 357 (Fla. 1st DCA 1981); Chiles v. Beaudoin, 384 So.2d 175 (Fla. 2d DCA 1980); Lubliner v. Gabrilowitz, 393 So.2d 46 (Fla. 3d DCA 1981); Revellino v. Avis Rent-A-Car System, Inc., 229 So.2d 896 (Fla. 3d DCA 1969); Pagan v. Holman, 195 So.2d 606 (Fla. 4th DCA 1967).
In respect to the summary judgment entered in favor of the City of Casselberry, no argument has been presented to this court, either in appellant's written brief or *1019 oral argument, to indicate the factual nature of any negligence by the City of Casselberry. The vague negligence allegation against Casselberry was stated in the third amended complaint thusly:
12) Defendant, THE CITY OF CASSELBERRY, acting by and through its agents, servants or employees acting within the scope of their agency, service or employment, carelessly and negligently operated an emergency vehicle owned by such Defendant City on or about May 16, 1980, on Red Bug Road in Casselberry, Florida. Such negligence was the direct and proximate cause of an auto collision wherein Plaintiff was injured.
13) Defendant, THE CITY OF CASSELBERRY, had a duty to operate their emergency vehicle with due regard for the safety of all persons using the highway and to give adequate warning to all other vehicular traffic along the emergency route.
14) Defendant, THE CITY OF CASSELBERRY, breached such duty to Plaintiff by negligently operating their emergency vehicle without due regard for the safety of all persons using the highway and by failing to adequately warn all other vehicular traffic along the emergency route, thereby causing a multiple car collision wherein Plaintiff was injured.
Formal assignments of error are no longer required. Fla.R.App.P. 9.040. It is required, however, that the brief of an appellant contain an argument with regard to each issue. Fla.R.App.P. 9.210(b)(4). The issue of the negligence vel non of the City of Casselberry has not been addressed by the appellant before this court. Even in the absence of a rule requiring that errors be assigned, professional advocacy necessitates that errors relied on for reversal should be stated in the brief, with the points argued. Florida Citrus Comm. v. Owens, 239 So.2d 840 (Fla. 4th DCA 1969); cert. denied, 242 So.2d 873 (Fla. 1971); Anderson v. State, 215 So.2d 618 (Fla. 4th DCA 1968); Cf., Health Clubs of Jacksonville v. State, 381 So.2d 1174 (Fla. 1st DCA), review denied, 389 So.2d 1110 (Fla. 1980).
The appellees, Casselberry and its carrier, have contributed to the confusing posture of this case by failing to raise the appellant's omissions adverted to above, either by motion to strike appellant's brief in regard to said appellees or in their answer brief, which is devoted to a discussion of the law of Florida relating to the presumption of negligence arising from a rear-end collision. The appellant attempts to raise one issue  the sufficiency of Casselberry's motion for summary judgment per Florida Rule of Civil Procedure 1.510(c)  for the first time in her reply brief, which is improper.
Accordingly, the summary judgment in favor of the Tennysons and their carrier, American Liberty Insurance Co., is reversed. The summary judgment in favor of the appellees, City of Casselberry and United States Fidelity & Guaranty Co., is affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
ORFINGER, C.J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
Four cars were travelling successively east on Red Bug Road in Seminole County, Florida; the first driven by a person unknown, the second driven by Roberts, the third by the appellee Tennyson, and the fourth by appellant Lynch. When confronted with the sudden emergency created by a City of Casselberry fire department truck (C.F.D.) entering the road unexpectedly and without warning the unknown driver stopped successfully avoiding a collision with the fire truck. Roberts also stopped without colliding with the rear of the unknown car. Tennyson was unable to voluntarily stop and collided with the rear of Roberts' car. Likewise thereafter Lynch was unable to voluntarily stop and collided with the rear of Tennyson's car.
*1020 
These basic facts are simple and uncontroverted. Their legal effect and consequence are not.
Lynch sued Tennyson and the City of Casselberry alleging negligence. Essentially Lynch's claim was that Tennyson was negligent in following Roberts more closely than was reasonably prudent under the circumstances which negligence caused Tennyson to collide with Roberts which collision caused Tennyson to stop suddenly, unexpectedly and without warning which stop caused, or contributed to causing, Lynch to collide with Tennyson. One trial judge granted Tennyson's motion for summary judgment. Another trial judge granted the City of Casselberry's amended motion for summary judgment and granted a final summary judgment for the city and against Lynch. Lynch appeals the final summary judgment. The majority opinion affirms the summary judgment in favor of the City of Casselberry and reverses the summary judgment in favor of Tennyson. I would do the opposite.
Traffic control laws provide that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions, having regard for all existing and potential hazards. The law further provides that in every event speed shall be controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance or object on or entering the highway in compliance with legal requirements and the duty of all persons to use due care. Among the conditions of which all drivers must keep constantly aware are (1) all existing or potential hazards that may require a stop to prevent a collision and (2) all factors that may affect the driver's ability to stop to avoid a collision with any person, vehicle or other object. Factors affecting an ability to stop without colliding include (1) the driven vehicle's stopping capacity including its speed, weight, tires and brakes, (2) the road conditions, including visibility of a safe stopping range, (3) the driver's skill, reaction time and attention. All of these factors are, or should be, within the knowledge and control of the driver of a vehicle but not that of the driver of some other vehicle. The law, in effect, places the duty on every driver to control the speed of a driven vehicle so that it can be stopped before it collides with any object ahead of it. This duty necessarily involves the distance within which the driver can see ahead and the distance to be maintained behind another vehicle moving in the same direction. Every driver has the duty and a concomitant right to stop as may be necessary to avoid colliding with any object ahead. This right and duty may require a quick stop and, when they do, this is a use of the road in the usual way and one of the "potential hazards" that is readily foreseeable by every driver who follows another vehicle. A driver is required to signal his stop.[1] Every driver is also charged with the knowledge that the driver of the vehicle ahead has the same rights and duties to stop suddenly when necessary. In effect the law requires all drivers to push ahead of *1021 themselves an imaginary clear stopping distance or assured stopping space or adequate zone within which the driven vehicle can come to a stop. Failure to maintain such a zone is normally the sole proximate cause of injuries and damages resulting from the collision of a vehicle with an object ahead. This is why when a vehicle collides with an object ahead of it, including the rear of a leading vehicle, there is a presumption of negligence on the part of the overtaking or following vehicle. About the only exception to this common sense rule occurs when a driver is maintaining an assured stopping space ahead and unforeseeably someone enters and shortens that space (such as the Casselberry fire department truck pulling onto Red Bug Road within the assured stopping space of the unknown car)[2] and the first driver is unable to stop within the reduced stopping space. This is all elementary traffic court law.
Lynch's claim against Tennyson is based on the proposition that by stopping "suddenly and without warning" the driver of a lead car may be guilty of negligence that contributes to the negligence of a following driver whose vehicle negligently collides with the rear of the lead car. To better understand the theoretical basis for this claim let us first consider the potential liability of Roberts to Tennyson, a matter not in issue in this case. Depending on the time, distances, road, weather, traffic and other conditions and circumstances, including the space left between Roberts and the unknown car when Roberts came to a stop, Roberts may, or may not have, decelerated and stopped unnecessarily quick in avoiding collision with the unknown car ahead of her. If, in the face of the sudden emergency, she did have judgment decision discretion or alternatives or options as to her rate of deceleration and she elected to decelerate unreasonably rapid, and to stop sooner than was necessary in order to avoid colliding with the unknown car and thereby unnecessarily and unreasonably shortened the time and distance Tennyson would have otherwise had within which to stop without colliding with Roberts and this contributed to causing Tennyson to collide with Roberts, then all questions of fact intrinsically involved in determining whether Roberts was guilty of negligence contributing to causing the Tennyson-Roberts collision, or even the Lynch-Tennyson collision, might properly be left to a jury for determination and no summary judgment should be entered on those issues. This rationale, although tenuous, might support a finding of negligence by Roberts as to Tennyson and even as to Lynch. The city employees operating the Casselberry fire truck obviously had an opportunity to make a judgment decision as to whether to pull out and into Red Bug Road exactly when and where it was done and if they exercised that judgment under the circumstances alleged (that is, without adequate warning and without due regard for the danger that decision and action created for oncoming traffic), imprudence and lack of due care in making that decision and in taking that action might be an adequate basis to support a finding that negligence of employees of the city contributed to causing the resulting multi-car chain reaction collisions that ultimately injured Lynch.
As no one has suggested or explained a better one, the above rationale also appears to be the sole basis for Lynch's claim of negligence against Tennyson. However, the above rationale does not apply to Tennyson's liability for the Lynch-Tennyson collision and I cannot agree with the statement in the majority opinion that negligence on the part of Tennyson that contributed to causing Lynch to collide with Tennyson can be inferred from the facts in this case because that statement is based on the premise or assumption that the proximate cause of the Tennyson car coming to a "sudden and unexpected" stop was the consequence of Tennyson's action in following Roberts too closely. Appellant's argument, *1022 approved by the majority opinion, goes as follows: Tennyson was negligent in following Roberts too closely, which caused Tennyson to collide with Roberts, which caused Tennyson to stop suddenly, which contributed to causing Lynch to collide with Tennyson. Therefore, it is reasoned, Tennyson's negligence in following Roberts too closely contributed to causing Lynch to collide with Tennyson. It sounds good because it flows good but this argument is not sound. The fallacy in this chain of reasoning lies in the assumed causal relationship in the implicit proposition, or enthymeme, that because Tennyson was legally negligent in colliding with Roberts, therefore Tennyson should be legally responsible to Lynch for the sudden stop that occurred as the result of the collision of Tennyson with Roberts. The fallacy is in the reasonable sounding assumption that Tennyson stopped because of the Tennyson-Roberts collision. Certainly in an immediate physical sense Tennyson stoped and stopped "suddenly" because she collided with Roberts but Lynch did not collide with Tennyson because Tennyson collided with Roberts but because Tennyson stopped and Lynch could not stop in time to avoid colliding with Tennyson. Tennyson was forced to stop because Roberts stopped in the road ahead of her and, once Roberts stopped when and where she did, Tennyson had no choice but to stop, one way or another. In a correct comparative sense, because it is uncontroverted that Roberts did stop before Tennyson stopped, Tennyson then had, at best, but two alternatives, viz: to stop by colliding with Roberts or to stop before colliding with Roberts. By colliding with Roberts Tennyson did not stop sooner or more suddenly than she would have stopped had she stopped before colliding with Roberts. While Tennyson may have collided with Roberts because she (Tennyson) was following Roberts too closely Tennyson did not stop ahead of Lynch because of her collision, she had no choice but to stop, with or without a collision, when, where and how she did because Roberts had already stopped. In a real sense Tennyson was but one link, without will or volition, in a connected causal chain stretching from the Casselberry fire truck entering the road back through the resulting necessary reactions of the other drivers and to Lynch's collision with Tennyson. The last event in this causal chain, that is, the one closest to the event whose cause is being sought (in this case Lynch's collision with Tennyson) is correctly referred to as the proximate efficient cause and in this case it is Lynch's inability to meet her duty to stop before colliding with Tennyson. Again, this is why a rear-end collision raises a presumption of negligence on the part of the overtaking vehicle. In the study of causation a necessary condition is one in the absence of which the event cannot take place. Neither Tennyson's following Roberts too closely nor Tennyson's collision with Roberts nor even an unnecessarily sudden stopping by Tennyson[3] was a necessary condition in the absence of which Lynch could not have collided with Tennyson. A sufficient condition is one in the presence of which the event is certain to take place. Lynch's driving at such a speed and close distance to Tennyson that she could not, under all conditions, stop without colliding with Tennyson is alone a sufficient condition of her collision with Tennyson, there being no other necessary conjunctive conditions.
As a matter of obvious and actual fact Tennyson's car did not come to a stop as a consequence of Tennyson following Roberts too closely but because Roberts' car, stopped in the highway, set a positive outer limit within which both Tennyson and Lynch were required to stop or collide. Under the uncontroverted facts and circumstances existing in this case Tennyson cannot be legally liable to Lynch for negligence in stopping her car too suddenly and unexpectedly and cannot be said to have stopped her car unnecessarily suddenly because, as a matter of law and physical fact, Tennyson could not, and did not, stop suddenly *1023 enough to avoid colliding with Roberts which Tennyson had an absolute legal duty to do and consequently an absolute legal right to try to do. When confronted with the sudden emergency caused by the Casselberry fire truck entering Red Bug Road no one has suggested that any of the car drivers, Lynch, Tennyson, Roberts, or the unknown driver, had any option except to try to stop before hitting the car (or fire truck) ahead of them.[4] Apparently, from the fact that the unknown driver did not hit the fire truck and Roberts did not hit the unknown car, both the unknown driver and Roberts did have some discretion or option but it was only to stop before or after hitting the fire truck or car ahead of them.
The tort duty to act only with due regard for foreseeable danger to others relates only to volitional acts. Under the uncontested facts in this case, consistent with a legal duty to avoid colliding with others, those operating the Casselberry fire truck had two choices: (1) the decision to, or not to, move onto Red Bug Road and (2) the manner in which it was done. The unknown driver and Roberts had no choice but to stop but may have had choice or volition as to the manner (i.e., the rate of deceleration). Tennyson and Lynch had no choice as to either stopping or the manner  they had to stop and do it as fast as absolutely possible.
From the moment Roberts stopped, Tennyson may not even have had a choice but to hit Roberts. If Tennyson had no choice but to stop by colliding with Roberts and made no decision, then, although she may be legally responsible for damages to Roberts (and to herself, Tennyson) for negligence in following too closely to stop without colliding with Roberts, nevertheless, Tennyson would not be liable to Lynch for negligence in making a decision as to the rate of her deceleration or as to the time and place she stopped. On the other hand, even considering that, theoretically, Tennyson had the same two options as did Roberts and the unknown driver, that is, to stop either before or after hitting the car ahead, consider carefully what they were and the consequences of Tennyson's exercise of either choice: if Tennyson had a choice and had exercised it in favor of stopping before hitting Roberts, then Tennyson's choice would have only shortened the time and space that Lynch had within which to stop before hitting Tennyson. By Tennyson actually hitting Roberts, Tennyson, whether intentionally or not, gave Lynch the maximum time and distance possible within which to stop without collision and Tennyson cannot be liable to Lynch for doing that. In summary, Tennyson either did or did not have volition as to the time and place she stopped ahead of Lynch. If she did not have choice she cannot be liable to Lynch for negligence in exercising that volition; if she did, she made the decision giving Lynch the maximum time and distance in which to stop without collision. As a matter of fact it was Roberts or the unknown driver or the fire truck driver but definitely not Tennyson, that made the decision and did the act that effectively set the limit of time and space within which both Tennyson and Lynch had to stop or collide with the car ahead.
As they traveled along down Red Bug Road, consider the distance between Roberts and Tennyson as "A" and the space between Tennyson and Lynch as "B." A driver must not follow another vehicle more closely than is reasonable and prudent. This means Tennyson had a duty to Roberts to maintain within distance "A" sufficient space within which Tennyson could stop without colliding with Roberts. Lynch likewise had a duty to Tennyson to maintain sufficient distance in "B" to enable Lynch to stop before colliding with Tennyson. Both Tennyson and Lynch violated this duty. However, in the context of *1024 Tennyson's right to stop, or to try to stop, to meet her duty to avoid colliding with Roberts, Tennyson had no legal duty to maintain a lookout for following vehicles. More specifically, Tennyson owed no legal duty to Lynch to observe the distance "B" that Lynch was maintaining as an assured stopping space and then to decide that Lynch was not maintaining a safe assured stopping distance and then to consider and extend distance "A" and to maintain it solely so that in any emergency Tennyson could use extended distance "A" ahead of herself in order to decelerate at a slower rate than necessary for Tennyson to avoid colliding with Roberts all only in order to give Lynch needed time and distance within which she (Lynch) could safely stop in addition to the insufficient distance "B" which Lynch was maintaining for that purpose. No driver does or is required by law to do this and merely to state it should be sufficient to demonstrate its absurdity. If Lynch needed more distance within which to come to a stop without colliding with Tennyson she was the best one to know it and she could gain it herself by merely extending distance "B." Drivers can control the distance between themselves and the car ahead but cannot effectively control the distance to the car behind them and the law should put no burden on them to do so. Tennyson cannot be legally faulted or held responsible for merely occupying the space equal to the distance of her car as it was crushed between Roberts and Lynch because "everyone must be somewhere" and Tennyson had as much right to be on Red Bug Road as any of the other drivers. She cannot be held liable for negligence by having merely been there. Tennyson was merely caught between two jaws or pincers, comprised of Roberts' stopped car ahead and Lynch's overtaking car from behind; for the result to Lynch, Tennyson should not be liable.
The absence of negligence because of the absence of an applicable legal duty can be ruled as a matter of law. Roberts' car being stopped in the highway ahead of Tennyson was an emergency that absolutely necessitated Tennyson stopping and as a matter of law Tennyson did not stop more suddenly than was necessary and is not liable to Lynch for stopping unnecessarily suddenly (by colliding with Roberts) although Tennyson may be liable to Roberts for not stopping soon enough. Tennyson should not be liable to Roberts for not stopping soon, or suddenly, enough and at the same time be liable to Lynch for stopping too soon or suddenly. By granting the summary judgment for Tennyson the trial judge correctly ruled as a matter of law that Tennyson owed no legal duty to Lynch as to the distance Tennyson followed Roberts. For these reasons I would affirm the summary judgment in favor of Tennyson and reverse the summary judgment in favor of the City of Casselberry.
NOTES
[1] Of course, every following driver desires an "adequate and sufficient signal" meaning one that gives the following driver adequate time and space within which to safely stop. However "an appropriate signal" is more correct and the usual vehicle automatic brake light permitted by statute is appropriate as a matter of law.
[2] There are numerous ways to invade and encroach upon the assured stopping space that a driver is trying to maintain ahead. Another example is a sudden stopping by a passing vehicle after a return to the right lane within the passed vehicle's assured stopping space.
[3] Lynch could overtake and collide with Tennyson even if Tennyson never stopped and was only moving in the same direction at a lesser speed.
[4] If Lynch should claim that Tennyson could have, and should have, veered to the left or right to avoid colliding with Roberts that argument would avail Lynch nothing because Lynch would have the same option and duty and the fact that Tennyson rammed Roberts rather than swerving left or right means only that Tennyson left that option open to Lynch by not preempting space to either side of Roberts.