579 So.2d 226 (1991)
Kenneth Leslie WILLIAMS and Betty J. Williams and Williams Communications, Appellants,
v.
STATE of Florida DEPARTMENT OF TRANSPORTATION, Appellee.
No. 90-1624.
District Court of Appeal of Florida, First District.
April 29, 1991.
*227 Will J. Richardson of Richardson Law Offices, P.A., Tallahassee, for appellants.
Thornton J. Williams, Gen. Counsel, and Thomas F. Capshew, Asst. Gen. Counsel, Florida Dept. of Transp., Tallahassee, for appellee.
ZEHMER, Judge.
Kenneth and Betty Williams and Williams Communications, Inc. (collectively referred to as Williams) appeal a final judgment entered pursuant to a jury verdict determining the amount of severance damages and business damages owed by the Department of Transportation to Williams for the Department's taking of their property. On this appeal, appellants seek a new trial on grounds that the trial court committed reversible error in: (1) denying their motion to strike the testimony of Presley, the Department's expert witness in real estate appraising, concerning Williams's damages; (2) overruling Williams's objections to the testimony of Biddle, the Department's expert in the electronics communications business, with regard to his evaluation of the Williams business and the effect the Department's proposed cures would have on that business; (3) denying their motions to strike testimony of the Department's witnesses that the proposed cures would comply with city and county codes and ordinances; (4) denying their requested jury instruction on business damages caused by the Department's proposed cures; and (5) denying their motion for a new trial on the ground that the Department's expert in civil engineering and site planning engineering, Varnum, *228 gave false and misleading testimony.[1] Finding error in several of these points, we reverse and remand for a new trial.
Williams Communications, Inc., is a paging and radio telecommunications business located on Tharpe Street in Tallahassee. As part of a project to widen Tharpe Street, the Department found it necessary to "take" a 20-foot-wide strip of the property on which the Williams business is located. The property in issue is located in front of the Williams business and has been used as a parking lot for Williams customers and employees.[2] Williams claimed business and severance damages resulting from the taking in this eminent domain action by the Department.[3] At trial, the Department presented four alternate "cost to cure" proposals in an attempt to mitigate the claimed business and severance damages. Each of these proposals involved replacing the lost parking spaces with new parking spaces on the remainder of the property. Williams presented one cost to cure proposal premised on the complete redevelopment of the remainder of the property to replace the lost parking. At the close of the trial, the jury returned a verdict assessing severance damages at $72,000, the amount the Department's expert real estate appraiser, Presley, testified would fully restore Williams, and assessing business damages at $42,840, the amount of expenses the parties agreed Williams would incur as a result of having to temporarily relocate the business during construction of one of the Department's cures. The trial court entered a final judgment in accordance with this verdict, and denied Williams's motion for a new trial.
We first address whether the trial court erred in denying Williams's motion to strike Presley's damages testimony on the ground that such testimony was based on an inaccurate interpretation of the law. In testifying for the Department as an expert in real estate appraising, Presley stated that the loss of the 20-foot-wide strip from the front of the Williams property would result in severance damages of $177,000 if nothing was done to correct the loss of parking problem. But a rear parking area could be placed on Williams's remaining property to replace the lost front parking, he opined, at a construction cost of approximately $24,000. The rear parking area would require usage of about 8,000 square feet of the property remainder, which equates to $48,000 for this land, based on a valuation of $6 a square foot. Thus, according to Presley, this cost to cure would be $72,000. He further stated that this or any of the Department's other three proposals would cure the severance damages on the parcel. He stated that he did not appraise any aspect of business damages but had taken into consideration "all effects" that the loss of the 20-foot-wide strip would have on the remainder of the property. In his opinion, all of the damages and effects to the remainder could be *229 cured by the payment of $72,000, which would "fully restore" Williams. Williams argues that Presley's damages testimony is based on an inaccurate interpretation of law as stated in Department of Transportation v. Byrd, 254 So.2d 836 (Fla. 1st DCA 1971), and thus the court erred in denying the motion to strike it.
Section 73.071(3), Florida Statutes (1989), authorizes an award of severance and business damages for a taking of less than the whole of business property. Severance damages and business damages are generally viewed as distinct and separate types of damages. "The cost of effecting physical changes or modifications in the premises necessitated by a taking are in the nature of damages to the remainder or severance damages ...," while business damages "are more in the nature of lost profits attributable to the reduced profit-making capacity of the business caused by a taking of a portion of the realty or improvements thereon." LeSuer v. State Road Department of Florida, 231 So.2d 265, 268 (Fla. 1st DCA 1970). Both severance damages and business damages may be recovered except when they are identical in nature, as double compensation is disallowed. Department of Transportation v. Ness Trailer Park, 489 So.2d 1172 (Fla. 4th DCA), rev. denied, 501 So.2d 1281 (Fla. 1986). This necessarily recognizes that both types of damages may be based to some extent on overlapping considerations.
In Department of Transportation v. Byrd, 254 So.2d 836 (Fla. 1st DCA 1971), this court affirmed a trial court's refusal to admit testimony of an appraiser to the effect that no severance damages were sustained by a motel owner as a result of the Department of Transportation's taking the motel's parking spaces because those parking spaces could be relocated on a portion of the remainder on which a shuffleboard court was then located. This court stated that the expert's opinion on damages and cure was properly excluded because it was based on a misconception of the law in that it ignored the reality of the missing shuffleboard court, ignored the reduction in value of a motel with smaller grounds for its guests to enjoy, and ignored the lesser area for expansion. The court concluded that the appraiser's testimony was impermissibly based on a premise that would require destruction by the property owners of property that is outside the area of taking as a means of theoretical mitigation of damages.
Applying these legal principles to Presley's opinion testimony, we conclude that it is similarly based on a misconception of the law. Presley's opinion ignores the fact that the new parking area would not provide as much space for parking as Williams had before the taking, ignores the fact that the new parking area would intrude into Williams's service area, ignores the impact that rear parking for customers might have on the value of the property as a business site, and ignores the fact that the new parking area would prevent further expansion of the business on that site.[4] All of these items were appropriate for consideration as severance damages under the Byrd decision and should have been considered in the formulation of Presley's opinion. Where the testimony of an appraiser is based on a misconception of the law resulting in a lower valuation of damages than if he had correctly applied the law, such testimony should be excluded. Department of Transportation v. Byrd, 254 So.2d at 837; Anderson v. State Road Dept., 204 So.2d 899, 901 (Fla. 1st DCA 1967). Because Presley failed to consider any aspect of the impact of these required changes in the use of the property in determining the total damage resulting from the taking, the trial court committed reversible error in denying Williams's motion to strike his testimony.
We next address the question of the trial court's denial of Williams's objections to Biddle's qualifications as an expert in evaluating the Williams Communications business and Williams's objections to Biddle's *230 testimony that the Department's proposed cures would provide adequate or more than adequate parking for Williams Communications's customers. Biddle testified on voir dire that he had worked in communications businesses part time through high school, that he had been an airborne radio operator in the Navy, and that he had completed a four-year program in advanced electronic school while in the Navy. After leaving the Navy, he worked as an engineer in the marine electronics industry in Norfolk, Virginia, and then moved to Panama City where he started a marine electronics business. After four years, he got into the sales, service, and installations end of a two-way radio business, and then constructed and operated a cellular telephone business. He stated that he had been involved in site selection and the building of electronics businesses. Biddle admitted on Williams's voir dire that most of his expertise lies in the technical end of the electronics field. Williams accepted Biddle as an expert in the technical end of the electronics field, but objected to his qualifications to testify as an expert in evaluating electronics communications businesses. The court overruled this objection, and allowed Biddle to testify that the Department's proposed site plans would provide ample parking or more than adequate service to the Williams's customers than it had in the past.
The Department did not lay a proper predicate for Biddle to give opinion testimony with regard to the property needs of the Williams Communications business. Biddle's testimony on voir dire shows that his expertise lies in the technical aspect of the electronics field, not in determining property needs for electronics businesses. Biddle was not familiar with the precise details of many facets of the Williams business, the physical layout, and operational requirements.[5] While Biddle did testify that he had been involved in site selection and the building of his own electronics businesses, this does not qualify him as an expert in determining the property needs of other such businesses any more than a homeowner's experience in choosing a site for his own house qualifies him as an expert in choosing housing sites generally. We hold it was error to allow Biddle to testify, over objection, to the adequacy of the parking under the Department's proposed cures because it was outside the area of his expertise. See Harrison v. Savers Federal Savings and Loan Association, 549 So.2d 712 (Fla. 1st DCA 1989) (trial court erred in admitting real estate appraiser's testimony concerning the poor design of a shopping center in expressing his opinion on the fair market value of the center because the appraiser was not an architect or a design engineer and was not shown to be qualified to give an expert opinion on good or bad shopping center design).
Next, we address the trial court's denial of Williams's motions to strike Varnum's opinion testimony that the Department's proposed cures complied with city and county ordinances. Varnum prepared the four cost-to-cure site plan proposals for the Department and testified as an expert in civil engineering and site plan engineering. He opined that all four of the site plan proposals would comply with all applicable codes, ordinances, and laws. Williams adduced evidence that the proposed cures did not meet certain code requirements of the city and county zoning codes and moved to strike Varnum's testimony. In overruling Williams's motion to strike this testimony, the court volunteered that the strict requirements of the ordinances and codes would be subject to variance and that the parties could argue to the jury the applicability of the ordinances and the probabilities of a variance being granted.
The recent case of Seibert v. Bayport Beach and Tennis Club Association, Inc., 573 So.2d 889 (Fla. 2d DCA 1990), mandates reversal on this point. In Seibert, a condominium association sued the architect for alleged defects in the condominium buildings. The association asserted at trial *231 that the architect was responsible for damages, because, inter alia, the fire exit designs were defective, and presented the testimony of an expert witness that one unenclosed exit did not comply with the Standard Building Code. The appellate court held the admission of this testimony error, stating:
The jury was allowed to determine the meaning of the code and then whether Seibert [the architect] violated the code by designing only one fire exit. This was error. An expert should not be allowed to testify concerning questions of law, and the interpretation of the building code presented a question of law. [Citations omitted.]
It was the duty of the trial judge to interpret the meaning of the code and instruct the jury concerning that meaning. Any conflicts in interpretation were for the court to resolve and their resolution was not a jury issue. [Citations omitted.]
573 So.2d at 891-92.
As in Seibert, the trial judge in this case should have reviewed the applicable codes and ordinances, interpreted the legal requirements thereof, and determined whether the Department's proposed cures met the minimum requirements of these laws. If the proposals so complied, the court could then have properly allowed evidence of the proposed cures to go to the jury. If the proposals did not so comply, the evidence should have been excluded. If there were any disputed issues of fact concerning their application, the trial court was required to determine the legal requirements of the code and give appropriate instructions to the jury thereon so that it could resolve such issues of fact. But it was not the province of the jury to determine whether the Department's proposed cures met the requirements of the code based on the witnesses' opinions or whether it was possible to obtain a variance for any deviations therefrom. The trial court committed reversible error in allowing Varnum to testify, over objection, on these questions of law and in submitting these questions to the jury.
Finally, we address Williams's argument that the court erred in denying the requested jury instruction on business damages caused by the Department's proposed cures. The requested jury instruction at issue reads as follows:
If you select a "cost to cure" in mitigation or elimination of severance or business damages which utilizes property on the remainder to mitigate or eliminate severance or business damages, you must consider the amount of business damages caused by the use of the property on the remainder to "cure" the severance or business damages.
Williams argues this is a correct statement of law, citing Dept. of Transportation v. Ness Trailer Park, 489 So.2d 1172; Dept. of Transportation v. Byrd, 254 So.2d at 837. We have no doubt that Williams might be entitled to an instruction that, in determining business damages, the jury should consider the impact of any one of the proposed "cost to cure" recommendations on the future business operation and profitability. However, the instruction as phrased is somewhat confusing, so that the court's refusal to grant cannot be viewed as an abuse of discretion requiring reversal. A more appropriately worded instruction can be offered to the court at the new trial herein ordered on the other points raised.
Finding reversible error in the court's refusal to strike Varnum's testimony that the proposed cures complied with the applicable codes and ordinances, we conclude it is not necessary to reach the issue of whether the court erred in denying Williams's motion for a new trial on the ground that Varnum's testimony was false and misleading.
REVERSED AND REMANDED for a new trial.
NIMMONS and MINER, JJ., concur.
NOTES
[1] Williams's initial brief did not list these precise issues for review. Rather, the brief listed six "issues," only one of which challenged a specific ruling of the trial court. A lengthy study of the initial brief revealed the five allegedly erroneous rulings set out above, however. Because the Department addressed each of these alleged errors in its answer brief, we determined that it would not be prejudiced by our proceeding with appellate review of these errors as stated by Williams rather than delaying review while awaiting corrected briefs.

We take this opportunity, however, to point out that as an appellate court we can only review specific action or rulings by the trial court; we do not review abstract questions of law. Thus, it is imperative that the appellate practitioner clearly identify in each point on appeal the specific ruling of which review is being sought. While the appellate rules no longer require formal assignments of error, appellate counsel still must be vigilant in specifying for the reviewing court the alleged erroneous rulings committed below. See Fla.R.App.P. 9.210, Committee Notes; Lynch v. Tennyson, 443 So.2d 1017 (Fla. 5th DCA 1983); Florida Citrus Commission v. Owens, 239 So.2d 840 (Fla. 4th DCA 1970), cert. denied, 242 So.2d 873 (Fla. 1971). Failure to observe these points of good appellate practice may result in the court's failing to appreciate the merits of an otherwise reversible error.
[2] The exact number of parking spaces Williams lost due to the taking is uncertain because the parking spaces in the front parking lot were not lined.
[3] The parties stipulated that the Department owed Williams $22,502 as compensation for the property actually taken, and that is not in dispute on this appeal.
[4] There was evidence that the Williams business had been growing at the rate of 15-20 percent a year.
[5] For example, Biddle admitted that he did not know how many employees Williams had nor the number of parking spaces available on the front and rear of the Williams property before the taking.