606 So.2d 372 (1992)
F.M.W. PROPERTIES, INC., and Fred M. Webb, Appellants,
v.
PEOPLES FIRST FINANCIAL SAVINGS AND LOAN ASSOCIATION, a State Chartered Savings and Loan Association, Appellee.
No. 91-3077.
District Court of Appeal of Florida, First District.
August 12, 1992.
Rehearing Denied November 4, 1992.
David L. Fleming, Gulf Breeze, Bill R. Hutto of Hutto, Nabors, Bodiford & Warner, Panama City, for appellants.
John L. Gioiello of Barr & Gioiello, Panama City, Les W. Burke, Panama City, for appellee.
KAHN, Judge.
This action arises from a mortgage foreclosure complaint filed by Peoples First Financial Savings and Loan Association (Peoples First) against F.M.W. Properties, Inc. (F.M.W.) and Fred M. Webb. The complaint alleges that on May 13, 1987, F.M.W. executed a promissory note and mortgage in favor of Peoples First in the principal amount of $518,000.00. At the same time, Mr. Webb executed a guaranty agreement in favor of Peoples First, guaranteeing F.M.W.'s obligation under the note and mortgage. Under the terms of these loan documents, the obligation would mature on June 1, 1990. When F.M.W. and Webb did not make payment at maturity, Peoples First filed a foreclosure action alleging the default in payment of principal in the amount of $287,665.00 and interest in the amount of $8,566.85 through July 16, 1990.
F.M.W. and Webb answered the foreclosure complaint, admitting the execution and delivery of the promissory note and mortgage, as well as Webb's guaranty agreement. The defendants denied, however, any default under the note, mortgage and guaranty agreement, and denied that any overdue principal or interest was owed. F.M.W. and Webb also raised the following "additional defenses":
11. Since the inception of the subject loan in 1987, defendants have substantially reduced the principal balance thereof *373 by selling property within the subdivision which is subject to Plaintiff's mortgage, and Plaintiff released lots from the mortgage on account of such sales. It was the intention of the parties at the time the subject loan was originated that the loan would be repaid from sales, and the maturity date of the loan was based upon a good faith estimate of the time needed to sell enough lots in order to satisfy the loan. It was never intended by either party that Defendants would be required to pay the indebtedness from their separate funds or that Plaintiff would, or could, demand immediate payment of the entire principal balance of the loan upon maturity. These understandings are typical of a long-standing relationship and course of dealing between Defendants and Plaintiff.
12. When the subject loan matured on June 1, 1990, Defendants sought a renewal consistent with their understandings. Plaintiff offered to renew the loan but, much to the surprise of Defendants, demanded that the subject property be pledged as additional security for another loan. A copy of Plaintiff's offer, by letter dated June 12, 1990, is attached hereto.[1] When Defendants refused to comply with Plaintiff's extortionate demand, the present action was initiated.
13. Based upon the understandings and course of dealing between the parties and Plaintiff's inequitable conduct, Plaintiff should be estopped and otherwise barred from obtaining the relief sought herein, and the instruments upon which this action is based should be reformed to renew the loan on the terms set forth in Plaintiff's June 12, 1990 letter but without the requirement of cross-collateralization of the other loan.
Peoples First then filed a motion for summary final judgment, accompanied by an affidavit of indebtedness executed by Raymond Powell, the Executive Vice-President of Peoples First. F.M.W. and Webb countered by filing the affidavit of Mr. Webb, making the following sworn averments:
2. When I made application with Plaintiff, Peoples First Financial Savings and Loan Association ("Peoples"), for the loan which is the subject of this action, I advised Peoples that the repayment of this loan would have to be from the sale of lots within the subdivision property which is subject to Peoples' mortgage, as is evidenced by the loan application signed by me and produced from the files of Peoples, a true copy of which is attached hereto as Exhibit "1". In fact, I had a specific discussion with Raymond Powell, Peoples' Vice President of Commercial Lending, about the three-year term offered by Peoples and advised him that it would take at least five years to sell out the subject subdivision. Mr. Powell represented to me that: (1) Peoples did not like to have term loans for more than three years on its books, but (2) the loan would be renewed at the end of the present three-year term.
3. Approximately two years ago when a sewer moratorium was announced with respect to the area within which the subject subdivision was located, I was asked by Raymond Powell of Peoples what the impact of the moratorium would be on the marketing of the subject subdivision and my ability to repay the subject loan. I advised the foregoing that the moratorium would, of course, slow down sales and that it would certainly not be possible to repay the loan within the present three-year term. I was again assured that the loan would be renewed at the end of such term.
The circuit court denied the motion for summary judgment, finding "that there are material facts in issue." Peoples First then proceeded to take Mr. Webb's deposition. In his deposition, Mr. Webb purported to describe two meetings with Mr. Powell of Peoples First. The first meeting, according to Webb, took place before the execution and delivery of the 1987 loan documents:

*374 Q. (By Mr. Burke, representing Peoples First): ... In your affidavit you refer to a conversation had with representatives of People's First at least in part with a gentleman named Raymond Powell relative to a commitment or agreement received from Peoples that the loan would be renewed at the end of its original term of three years. Do you recall the circumstances surrounding such an agreement as that?
A. Yes, sir.
Q. Okay. Could you tell me please the conversations during which that agreement was discussed? Was there more than one conversation?
A. There was the initial conversation on the front end of the loan. We had an understanding that we would pay the loan from the sale of lots and of course while you may be optimistic about how long it takes to sell lots or sell any other merchandise you need to, you need to cover yourself with some alternate plans if things don't go like you want. And Mr. Powell and I discussed that. He said, as I have heard, you know, from other places and other people that the bank wants to try to keep the term of the loan on a short basis. That was not new to me. But I told him that was fine as long as they would work with me if sales did not go as planned and if I could get renewals, you know, if everything was okay, you know, if I wasn't behind on the interest or anything like that, they would work with me until the thing sold out substantially.
Q. Was that a conversation with Raymond Powell?
A. Yes.
Q. And is he an officer of Peoples First Financial?
A. Yes.
Q. And this was just in the weeks or days prior to the actual closing of the loan?
A. Yes.
Q. Okay. Was there anyone else present during that conversation?
A. Not that I remember.
Mr. Webb also testified of another meeting with Powell:
Q. Were there any subsequent meetings to that prior meeting which involved a discussion between Mr. Powell and you or any other representatives of Peoples First?
A. Yes, sir.
Q. When was that?
A. The county cut off the sewer all over Callaway approximately two, two and a half years ago. And I was in Mr. Powell's office on a, I believe on a renewal on the H & S loan and he asked me about the sewer shutdown in Callaway, what effect it was going to have on us. I told him it was, you know, I didn't know how long it was going to last, but if it lasted any length of time, it had already lasted some time, that it would, not only would we not be selling any lots during that time but it would ultimately throw a damper on all of Callaway which could take quite a while to recover. That of course turned out to be true. It's only now Callaway has begun to recover from the county's actions out there I think. And I told Mr. Powell that, you know, I reminded him that our loan would be coming up and that I certainly would not be able to have it all paid off by that point and he assured me again, `Don't worry, we'll work with you, we told you we would and we will.'
Q. And when did that conversation occur?
A. Sometime either during the time that the sewer was shut off, either right towards the end of it or close to the end of the moratorium. And I can't recite the days right offhand. I'm able to correlate these events with other events, but it's hard for me off the top of my head to quote dates.
After the Webb deposition, Peoples First renewed its motion for summary judgment, alleging that the only evidence advanced by F.M.W. and Webb to support their allegation of an oral agreement contrary to written contract terms of the loan documents is the testimony of Mr. Webb, set forth above. Peoples First asserted that such *375 evidence did not meet the standard of "clear, precise, and indubitable," as required by Florida law to overcome the general prohibition against proving an oral agreement contrary to a written contract. Mallard v. Ewing, 121 Fla. 654, 164 So. 674 (1935).
The circuit court entered partial summary judgment in favor of Peoples First, and supported its order by the following conclusions:
There is a conflict between the affidavit and testimony of the Defendant, Fred M. Webb, with the affidavit of Raymond Powell on behalf of the Plaintiff. This discrepancy concerns whether or not oral representations were made, either before or at the signing of the loan documents. In support of the Defendant's position they cite Mallard v. Ewing, [121 Fla. 654], 164 So. 674 (Fla. 1935).
In reviewing the Mallard case and its prodgeny [sic], it appears that most courts have required that there be additional independent proof to support the parol evidence. Here, there is no independent proof and lacking this, the Defendant does not have clear, precise and indubitable evidence of the contemporaneous oral agreement which induces the execution of the written instruments sufficient to make the parol evidence of the Defendant, Fred M. Webb, admissable to prove the agreement. Chase Manhattan Bank v. Rood, 698 F.2d 435 (11 Cir.1983).
From the court's order deciding the issue of liability in favor of Peoples First, F.M.W. and Webb bring this appeal.
Upon review of the briefs and the record, we conclude that the trial court properly rejected appellants' proffered testimony regarding an oral agreement between Webb and Powell. Mallard v. Ewing, supra. In Venusa Development Corp. v. Southeast Mortgage Co., 297 So.2d 86 (Fla. 3d DCA 1974), the court quoted at length from the order under review, entered by then Circuit Judge Schwartz:
Neither the Parol Evidence Rule nor the foundation for it can, in this Court's opinion, be obviated or obliterated by merely averring an oral promise, allegedly constituting part of an oral agreement made prior to or contemporaneously with a valid and unambiguous written agreement, was or constituted a misrepresentation, fraudulent or otherwise. If such were the case, any alleged oral misrepresentation, constituting part of an oral agreement made prior to or contemporaneously with a clear written agreement, could be characterized as fraudulent to escape the very reason for the common law rule excluding the admission of parol evidence in contravention of an unambiguous written agreement. And if such alleged oral agreement cannot be proved by competent legal evidence, the agreement itself cannot be regarded as existing in fact or in law, since there can be no legal proof of it.
297 So.2d at 89, n. 1.
Since appellants offered no competent evidence, in the face of a legally sufficient summary judgment motion, the trial court properly rejected their attempt to avoid the loan documents by way of Mr. Webb's oral assertions.
We have not ignored appellants' contention in the amended initial brief that "there is evidence of a subsequent meeting between Mr. Webb and Mr. Powell wherein Mr. Powell reaffirmed the oral agreement. Evidence of a subsequent oral modification is admissible even where the writing contains a merger clause. Linear Corp. v. Standard Hardware Co., 423 So.2d 966 (Fla. 1st DCA 1982)." Appellants have not properly raised a question of subsequent oral modification of the loan documents. As may be seen from our above recital of the pleadings filed by F.M.W. and Webb, no affirmative defense raised by F.M.W. and Webb properly seeks to assert the existence of a subsequent oral agreement. See Dober v. Worrell, 401 So.2d 1322, 1323 (Fla. 1981) ("[F]ailure to raise an affirmative defense before a trial court considering a motion for summary judgment precludes raising that issue for the first time on *376 appeal").[2] Furthermore, as will be discussed in greater detail below, no issue in the brief addresses this. Cf. The Race, Inc. v. Lake & River Recreational Properties, Inc., 573 So.2d 409 (Fla. 1st DCA 1991) (admission of a subsequent oral agreement between lender and borrower would not be barred where a borrower properly raised affirmative defense of failure of consideration). It is noteworthy that in the present case appellants do not even point to facts that would support a finding of a subsequent new agreement or modification. Webb's testimony that he was told by Powell, "don't worry, we'll work with you," hardly constitutes an agreement supported by consideration, and we decline to consider it as proper evidence of such.[3]
In view of the importance to litigants, and this court, of having legal issues properly presented for resolution, we feel that it is incumbent upon us to comment upon certain problems we have noted in our review of this case.[4] Appellants filed their initial brief on October 9, 1991. On October 11, 1991, this court struck appellant's brief because it contained no statement of facts. On October 28, 1991, appellants filed their amended initial brief.
Appellants' Table of Contents at page "i" contains a line reading: "ISSUES PRESENTED ON APPEAL ... 4." Page four of the brief, entitled "ISSUES PRESENTED ON APPEAL" reads in its entirety as follows:
1. Whether the lower court properly entered an order granting partial summary final judgment based upon:
(a) The application of the parol evidence rule to evidence of oral representations and agreements here involved; and
(b) A finding that the inducement and condition precedent exceptions to the parol evidence rule do not apply based upon the lack of clear, precise and indubitable evidence of the oral representations, to wit: The individual defendants' testimony that they were unaware of supporting evidence other than their own testimony.
2. Whether other issues are presented in the present case which preclude the granting of partial summary judgment, *377 even if the evidence of oral representations and agreements is barred by the parol evidence rule.
3. Whether the trial court abused its discretion by ordering a consolidation of the present case with a case involving other parties and unrelated issues.
Turning back to the Table of Contents page of appellant's brief, the same contains a heading entitled "Argument," which prefaces five subheadings:

A. Introduction .................................................... 6
B. Whether the Proffered Testimony is Barred by the Parol Evidence
 Rule Absent an Exception ....................................... 9
C. Whether the Testimony of an Oral Inducement is Admissible Even
 Were the Parol Evidence Rule to be Applied ..................... 11
D. Evidence of Acceptance of Post-Foreclosure Payments by the
 Plaintiff Precluded Summary Judgment ........................... 14
E. The Lower Court Abused Its Discretion by Ordering a
 Consolidation .................................................. 15

Rule 9.210(b)(1), Florida Rules of Appellate Procedure, requires all initial briefs to contain a table of contents "listing the issues presented for review, with reference to pages." Appellants' brief does not comply with this rule. The "Issues" set out at page 4 do not comport with the five subheadings set out on the Table of Contents page underneath the "Argument" heading. While assignments of error are no longer required in Florida appellate practice, it should be clear that each matter upon which an appellant relies for reversal must be argued under an appropriate issue presented for review. Argument which addresses a point not set out in the issue on appeal will not be considered. McClendon v. International House of Pancakes, 381 So.2d 728 (Fla. 1st DCA 1980). "It is well settled that, in order to obtain appellate review, alleged errors relied upon for reversal must be raised clearly, concisely, and separately as points on appeal." Singer v. Borbua, 497 So.2d 279, 281 (Fla. 3d DCA 1986).[5]
This court now experiences filings at an annualized rate of 4,485 cases per year. This translates to 345 cases annually per judge of this court, and approximately 1,000 cases per three-judge panel. We are dedicated to the proposition that each case and each litigant must receive full and fair consideration. Accordingly, proper organization of briefs pursuant to the Florida Rules of Appellate Procedure is not only desirable and convenient, it has become an absolute necessity. In this case, appellants' brief purports to raise three issues on appeal, as set out at page 4. The argument section of the brief, however, does not track the issues appellants purport to raise. Recognizing that the courts have an obligation to lend finality to business transactions, we have refrained from striking appellant's amended initial brief, as we did their first brief.[6] We note, however, that *378 the failure to organize arguments under cogent and distinct issues on appeal presents sufficient reason for an appellate court to decline consideration of a matter. McClendon, supra.
Appellants' argument concerning Peoples First's grant of partial releases after the foreclosure is without merit, as is appellants' objection to the trial court's consolidation of this matter with another pending action between the same parties.
AFFIRMED.
SMITH, J., concurs.
ERVIN, J., specially concurs with written opinion.
ERVIN, Judge, specially concurring:
Had appellant properly pled as an affirmative defense that there was a subsequent oral modification of the parties' contract, I would conclude that the final order of summary judgment should be reversed. The parol evidence rule does not prohibit the admission of a subsequent oral agreement that modifies the previous agreement between the parties. The Race Inc. v. Lake & River Recreational Properties, Inc., 573 So.2d 409, 410-11 (Fla. 1st DCA 1991); Linear Corp. v. Standard Hardware Co., 423 So.2d 966, 968 (Fla. 1st DCA 1982). I believe that appellants presented competent evidence which established this as a genuine issue of material fact.[7] Moreover, by generally denying the substance of appellants' allegations,[8] appellee demonstrated the existence of a factual issue. Ton-Will Enters., Inc. v. T & J Losurdo, Inc., 440 So.2d 621, 622 (Fla. 2d DCA 1983).
Nevertheless, although the evidence in the record at the time of the summary judgment hearing demonstrated the existence of a disputed issue of fact, appellants waived this issue by failing to plead modification as an affirmative defense.[9] The supreme court has observed that at the summary judgment stage of a proceeding, the issues are defined "solely by the pleadings," even if evidence outside the pleadings, such as depositions and affidavits, shows that a proper cause of action or defense may exist. Hart Properties, Inc. v. Slack, 159 So.2d 236, 239-40 (Fla. 1963). In Dober v. Worrell, 401 So.2d 1322 (Fla. 1981), the court specifically held that a party may not raise, on appeal from an adverse summary judgment, an affirmative defense that was not raised before the trial court, even if the record shows that such defense was possible, and the appellate court may not remand to permit the party to amend unless a motion for leave to amend was made in the court below. Id. at 1324.
Thus, I believe the lower court's order must be affirmed, because it properly disposed of the issues raised by the pleadings (and consequently did not mention the issue of subsequent oral modification), and there is nothing in the record indicating that appellants *379 sought leave to amend their affirmative defenses.
NOTES
[1] The letter here referenced does not appear as an attachment to the pleading, which is itself included as Item 2 in the appellant's appendix, filed in this appeal of a nonfinal order. See Fla.R.App.P. 9.220.
[2] We have noted our earlier decision in DeAtley v. McKinley, 497 So.2d 962 (Fla. 1st DCA 1986). In that case this court reversed the summary judgment against the mortgagors with directions that the trial court allow the mortgagors to amend their answer so as to allege proper affirmative defenses. The opinion discloses that the DeAtleys incurred the debt initially by way of their agreement to pay $37,500 in return for a three-day investment seminar, and that they partially secured this sum by a mortgage note. Moreover, the DeAtleys attempted to represent themselves, and in so doing, failed to assert any affirmative defenses, and further failed to timely respond to two requests for admission served by the holders of the delinquent mortgage note. In the present case, F.M.W. and Webb have been represented from the start by competent counsel and possess in their own right a certain degree of financial sophistication. In view of Dober, we do not read DeAtley as excusing the need for timely defensive pleadings in mortgage foreclosure actions.
[3] In those limited circumstances where parol changes are admissible to alter the terms of a previous and unambiguous written contract, the rule is clear that the proffered evidence must support a new contract, and not merely a gratuitous assertion by the alleged promisor, unsupported by consideration or detrimental reliance by the promisee. Wilson v. McClenny, 32 Fla. 363, 13 So. 873 (1893) (parol evidence is admissible to establish a subsequent contract that alters, modifies, or changes former existing agreement between parties); Vorzimer v. Kaplan, 362 So.2d 451 (Fla. 3d DCA 1978) (parol testimony must be sufficiently specific to establish a new meeting of the minds between the contracting parties which changed the terms of a written contract subsequent to its execution); King Partitions & Drywall Inc. v. Donner Enterprises Inc., 464 So.2d 715 (Fla. 4th DCA 1985) (oral agreement which is accepted and acted upon by the parties in reliance thereon may create a new contractual undertaking where refusal to enforce subsequent oral agreement would work a fraud on either party). In light of these authorities, we are simply unable to conclude that a bank officer's statement, "don't worry, we'll work with you," without more, constitutes a new contract, so as to bring a collection matter to a screeching halt.
[4] We intend no criticism of appellants' counsel in this case, but use this case merely as an example to emphasize the need for greater attention on the part of appellate practitioners to the requirements of the appellate rules, and to urge greater efforts toward accuracy in form and content of briefs filed in this court.
[5] The following string cite from the Singer case is helpful should one be interested in locating other authorities: "See Lunch v. Tennyson, 443 So.2d 1017, 1019 (Fla. 5th DCA 1983); McClendon v. International House of Pancakes, 381 So.2d 728, 728 (Fla. 1st DCA 1980); Anderson v. State, 215 So.2d 618, 619 (Fla. 4th DCA 1968); see also Redditt v. State, 84 So.2d 317, 321-22 n. 1 (Fla. 1955) (emphasizes importance of points on appeal for proper judicial review), aff'd, 88 So.2d 126 (Fla. 1956) (en banc); Fla.R.App.P. 9.210(b)(5) (Committee notes from 1977 revision of sections (b), (c), (d), (e)); cf. Carroll v. Hertz Corp., 132 So.2d 624, 625 n. 1 (Fla. 3d DCA 1961) (disapproves of single `double-barrelled' points addressing two issues), cert. denied, 138 So.2d 333 (Fla. 1962)." 497 So.2d at 281.
[6] The court similarly did not strike appellant's brief in Williams v. State, Department of Transportation, 579 So.2d 226 (Fla. 1st DCA 1991), but cautioned: "We take this opportunity, however, to point out that as an appellate court we can only review specific action or rulings by the trial court; we do not review abstract questions of law. Thus it is imperative that the appellate practitioner clearly identify in each point on appeal the specific ruling of which review is being sought ... Failure to observe these points of good appellate practice may result in the court's failure to appreciate the merits of an otherwise reversible error." 579 So.2d at 229, n. 1.
[7] In an affidavit, appellant Fred Webb stated that Raymond Powell, vice-president of appellee, "assured [Webb] that the loan would be renewed at the end of such term." In his deposition, Webb testified that sometime in 1989, Bay County cut off sewer services for the properties at issue. Webb testified that he discussed the matter with Powell, who asked what effect the shutdown would have on FMW Properties. Webb told him that it would put a damper on the sale of lots, and that he "certainly wouldn't be able to have it all paid off" by the time the loan came due, and that Powell "assured me again, `Don't worry, we'll work with you, we told you we would and we will.'"
[8] Powell refuted Webb's allegations in an affidavit, stating, "at no time subsequent to" the execution of the contract, "have I promised, guaranteed, or inferred that the Promissory Note would be renewed."
[9] Although I have found no Florida case expressly stating that modification is an affirmative defense, other jurisdictions that have considered the question have determined that it is. See, e.g., Counties of Warren & Washington Indus. Dev. Agency v. Boychuck, 109 A.D.2d 1024, 487 N.Y.S.2d 139, 141, appeal denied, 65 N.Y.2d 603, 492 N.Y.S.2d 1025, 482 N.E.2d 567 (1985); Danjee, Inc. v. Addressograph Multigraph Corp., 44 N.C. App. 626, 262 S.E.2d 665, 671-72 review denied, 300 N.C. 196, 269 S.E.2d 623 (1980); Carothers v. Carothers, 260 Or. 99, 488 P.2d 1185, 1188 (1971); Metrocon Constr. Co. v. Gregory Constr. Co., 663 S.W.2d 460, 463 (Tex. Ct. App. 1983); Tennien v. Pittsford, 137 Vt. 326, 404 A.2d 111, 114 (1979).